CALOGERO, Judge.
The defendant was charged with public bribery in violation of LSA-R.S. 14:11s.[1] Essentially, the bill of information charged that while a member of the Lafourche Basin Levee District, the defendant offered to accept $800.00 in exchange for his influence in helping to secure from the District a service contract for a particular individual. The defendant was convicted and sentenced to serve four years and eleven months at hard labor, as well as to pay a fine of one thousand dollars. The defendant appeals, presenting seventeen bills of exceptions for our consideration.
*417 A consideration of all seventeen of the bills is unnecessary, however, as we find merit in Bills of Exceptions Nos. 1, 3 and 4 and accordingly reverse the defendant’s conviction.
The record discloses that Mr. Watson, owner of an aerial crop dusting service, received information from a client of his to the effect that he, the client, could help Mr. Watson obtain a spraying contract from the Lafourche Basin Levee District. Watson expressed interest in such employment and consequently the client, via a telephone call, introduced Watson to the defendant, a member of the Board of Commissioners of the Levee District. A meeting was then arranged for June 22, 1971.
Watson suspected that he would be asked to agree to a kickback in consideration for getting the contract (his client told him as much), and acting upon this suspicion, he made contact with the Organized Crime Intelligence Division of the State Police. After discussion of the situation, it was decided that a police officer, posing as Watson’s pilot, would accompany Watson to his meeting with the defendant.
Thus, on June 22, Watson and the officer met the defendant at the Creole Kitchen, a restaurant located in St. Charles Parish. The defendant, however, declined to discuss the spraying contract in the presence of the “pilot”, and drew Watson aside. At this time, according to Watson, the offer in effect was made and a scheme to carry it out was planned. Defendant told Watson he was to present two separate invoices, totalling approximately $1900.00, for the spraying job which was actually worth $600.00. After payment of the invoices Watson was to keep $1100.00 and give $800.00 in cash to another member of the levee board.[2]
Subsequently, with Watson’s permission, a recording device was installed on Watson’s telephone, and various conversations between Watson and the defendant were recorded. These conversations concerned the mechanics of completing the kick back scheme agreed upon at the June 22 meeting. The six conversations consisted of calls Watson made to the defendant on June 23, 1971, June 29, 1971, July 1, 1971, and July 28, 1971, and the defendant’s return calls to Watson on June 23, 1971 and July 28, 1971.
It appears that all six conversations were between Napoleonville in Assumption Parish, and Harvey, in Jefferson Parish, or vice-versa. At any rate, it is not shown that either party, in any of the six telephone calls, was in St. Charles Parish. This fortifies the defendant’s position that he was tried in St. Charles Parish for a crime that occurred in St. Charles Parish on June 22, especially since none of the six calls, or any other evidence, indicates a later separate or a renewed offer to accept a bribe.
During defendant’s trial, these six electronically recorded conversations were introduced into evidence.
Prior to trial, the defendant sought to be allowed to inspect these recordings. Initially, he filed a Motion for Production and Examination of Evidence. This motion was denied by the trial court, and Bill of Exceptions No. 1 was reserved to this ruling.
Subsequently, the defendant filed a Prayer for Oyer, requesting the State to furnish any written and/or oral confessions, inculpatory, or exculpatory statements. The State’s answer to this Prayer for Oyer was that they were not in possession of a written or video-taped confession *418 and further, that they were not required to furnish the defense any oral confessions or inculpatory statements.
The trial court ordered that the defendant be given any written or taped confession, but “under the circumstances and conditions revealed at the hearing,” denied production of any inculpatory statements. Further, the trial court ruled the accused was not entitled to any oral confessions or admissions. To this ruling, defendant reserved Bill of Exceptions No. 3.
The State did not produce any wire or tape recorded statements. Yet, on the afternoon of the first day of trial, the State served notice of intent to introduce confessions and/or inculpatory statements. The defendant at this point reserved Bill of Exceptions No. 4.
The defendant argues under the three bills that it was error for the State to fail to produce the recorded inculpatory statements for pre-trial inspection by the defense.
It was in State v. Dorsey, 207 La. 928, 22 So.2d 273 (1945), that this Court established the rule that a defendant in a criminal proceeding is entitled upon request to a pre-trial inspection of any written confession or inculpatory statement alleged to have been made by him and which is in the possession of the State. We held:
“Under the provisions of the Constitutions of the United States and this State, every accused is entitled to, and is guaranteed, a fair trial, and to deny his counsel a pre-trial inspection of [the] accused’s written confession is, in our opinion, tantamount to depriving such accused of a fair trial, and is in violation of his constitutional rights.”
In State v. Hall, 253 La. 425, 218 So.2d 320 (1969), the rule was extended to an electronically recorded video tape confession, and in State v. Bendo, 281 So.2d 106 (1973), to tape recorded inculpatory statements.
Thus, the fact that the conversations in the instant case are tape recorded ones presents no bar to their pre-trial inspection.
The more serious problem presented here is a basic one. Are the conversations “in-culpatory statements” within the meaning of the Dorsey rule? This Court, in defining inculpatory statement as used in Article 768, Code of Criminal Procedure, stated : “ . . . the term inculpatory statement refers to the out-of-court admission of incriminating facts made by a defendant after the crime has been committed. It relates to past events.” State v. Fink, 255 La. 385, 390, 231 So.2d 360, 362 (1970).
We find support in the recent decision of State v. Bendo, cited supra, for finding that the conversations in the instant case were “inculpatory” ones as defined in Fink. In Bendo, a situation similar to the one involved in the instant case was presented. The defendants in that case were charged with criminal damage to property. The State argued that the tape recorded statements were made “during the continuing course of the commission of a criminal conspiracy to damage property.” Thus, the State argued, the statements were not post-crime inculpatory ones subject to pre-trial inspection.
We noted in Bendo that had the defendants been charged with criminal conspiracy to commit criminal damage to property, “the statements would have been made during the commission of the conspiracy and thus not within the category of ‘confession’ or ‘inculpatory statement’ as established in State v. Fink, supra.”
We concluded, however, that the recorded inculpatory statements, while made prior to the defendant's arrest, were made after the commission of the specific criminal activity with which the defendant-was *419 charged, and were therefore subject to pre-trial inspection.
We find the instant case presents a similar factual situation. The recorded conversations occurred prior to defendant’s arrest on August 4, 1971. These conversations, however, did occur after the commission of the crime. What the State proved to have been the defendant’s charged criminal activity, i. e., offering to accept a bribe, occurred during the meeting between the defendant and Watson on June 22, 1971 at the Creole Kitchen in St. Charles Parish.
The State argues that the defendant’s crime was a continuing offense,[3] and that the tapes were made prior to the completion of the crime charged. Evidently, the State is arguing that the crime was “completed” on August 4, on which date Watson transferred cash to another public official, not the defendant. This contention would have merit if the defendant had accepted that payment, either directly or indirectly, and had been charged with accepting a bribe. But this is not the situation presented. The defendant is on trial for offering to accept a bribe, not for accepting one. And although the information charges that the crime was committed between June 22, 1971 and August 4, 1971, the evidence merely proves a June 22, 1971 offer.
In our view, the events transpiring between June 23 and August 4, as it pertains to this particular defendant, reveal only the fact that the defendant did not withdraw his June 22 offer. The six recorded telephone conversations were indeed incul-patory, consisting as they did of conversations relating to the earlier “offer” and to the mechanics of effecting consummation of the transaction. We also take note that the State chose not to arrest the defendant on June 22, the day of the crime. This apparently served some purpose, such as affording the State an opportunity to catch the defendant actually accepting a bribe, or to build a stonger case against the defendant by obtaining recorded inculpatory statements, or perhaps to simply see where, and to whom, this scheme would lead.
While this is laudatory police work, it does not alter the fact that the crime with which the defendant was charged was committed on June 22, the inculpatory statements were recorded thereafter, and the defendant was denied his right for pretrial examination of the tapes.
We therefore find that the six tapes were post-crime inculpatory statements, required by Dorsey to be given the defendant upon request. The trial court, in refusing to order production of these inculpatory statements, and the State, in failing to produce them prior to trial, committed error.
Accordingly, the conviction and sentence are set aside and the case is remanded for a new trial.
SANDERS, C. J., dissents and will assign written reasons.
SUMMERS, J., dissents for the reasons assigned.

. § 118. Public Bribery
Public bribery is the giving or offering to give, directly or indirectly, anything of apparent present or prospective value to any of the following persons, with the intent to influence his conduct in relation to his position, employment, or duty:
(1) Public officer or public employee; or
(2) Election official at any general, primary, or special election ; or
(3) Grand or petit juror; or
(4) Witness, or person about to be called as a witness, upon a trial or other proceeding before any court, board, or officer authorized to hear evidence or to take testimony.
The acceptance of, or the offer to accept, directly or indirectly, anything of apparent present or prospective value, under such circumstances, by any of the above named persons, shall also constitute public bribery.
Whoever commits the crime of public bribery shall be fined not more than one thousand dollars, or imprisoned, with or without hard labor, for not more than five years, or both. (Emphasis provided)

. While this scheme seems to lack one element of the charged crime, namely offering to accept (for, or unto, himself), it constitutes the entirety of the State’s proof as to defendant’s offer. Presumably the jury was to infer that defendant was intending in someway to share the bribe after receipt by his colleague on the Commission. Actually defendant’s only statement as to the reason for the kickback was his colleague’s need to raise campaign money for a gubernatorial candidate.

. The bill of information under which the defendant was prosecuted charged that “BERT C. LEBLANC, a public officer, a member of the Board of Commissioners of the Lafourche Basin Levee District, . . . betioeen the daten of June 22, 1971 and August J, 1971 . . . did unlawfully and intentionally commit the crime of Public Bribery as defined in LSA-R.S. 14:118 in that he did in the Parish of St. Charles, Louisiana, offer to accept . . . ” (emphasis provided)