281 So.2d 106 (1973)
STATE of Louisiana
v.
Jackie BENDO and Milton Ray Woodward.
No. 52785.
Supreme Court of Louisiana.
June 11, 1973.
Rehearing Denied August 20, 1973.
*107 Dodd, Hirsch, Barker, Avant & Wall, Alex W. Wall, Baton Rouge, for defendants-appellants.
William J. Guste, Jr., Atty. Gen., Leroy A. Hartley, Special Asst. Atty. Gen., Ossie B. Brown, Dist. Atty., Ralph L. Roy, Asst. Dist. Atty., for plaintiff-appellee.
CALOGERO, Justice.
Jackie Bendo and Milton Ray Woodward were convicted of attempted simple criminal damage to property, La.R.S. 14:56, 14:27, and were each sentenced to serve one year in the parish jail and to pay a fine of $500.00, in default of which payment they were to be confined in the parish jail for ninety days. They appeal their convictions and sentences.
During the course of the proceedings, nineteen bills of exceptions were reserved and perfected. We need only consider the issue, presented in Bill of Exceptions Nos. 2, 10 and 15, of the propriety of the trial *108 court's ruling admitting certain recorded inculpatory statements of the defendants and the testimony of Ronnie Black, a police officer who heard these statements, in light of the action of the Assistant District Attorney which, in effect, denied the defendants their right to a pre-trial inspection of the taped inculpatory statements.
Prior to the trial on two occasions the defendants filed a motion for a bill of particulars. Each time one of the requests in the bill of particulars was as follows:
"Did either one of the defendants give any statement ... to the investigating officers or to any representative of the State of Louisiana, wherein such accused made inculpatory statements as to his participation in the alleged crime..."
* * * * * *
"... If such statement was taped or recorded, please advise, as to whether the State will furnish the undersigned attorney with a copy of the transcript or will make such tape or recording available to the attorneys."
The state replied to the request in each of the motions for a bill of particulars by stating that:
"Defendants Woodward and Bendo made no inculpatory statements or confessions to the investigative authorities subsequent to their arrest."
At the time the answer of the state was filed the state actually had in its possession a lengthy recording containing many inculpatory statements made by both defendants. The state had obtained this recording through the use of one John Lambert who was an alleged co-conspirator of the defendants. The statements were secured in the following manner.
The crime with which the defendants were charged was alleged to have occurred on December 9, 1969. At that time Lambert was an alleged accomplice of the defendants. However, from July of 1970 until the date of the defendants' arrest, Lambert was acting as an undercover agent for the investigating officers. Immediately prior to the arrest of the defendants, on August 27, 1970, Lambert, acting on instructions from the police, engaged the defendants in conversation in a room in the Bellemont Motel in Baton Rouge, La. with a view to obtaining inculpatory admissions from them. At the time, Lambert, unbeknown to the defendants, was "wired" with a transmitting device and there were a number of police officers present at the motel. Some of the officers were in an adjoining room with a recording device and receiver, and others were located elsewhere anticipating the arrest of the defendants. It is admitted by the state that Lambert engaged the defendants in conversation for several hours for the express purpose of obtaining and recording inculpatory statements.
The entire conversation, consisting of many of the defendants' statements, inculpatory in nature, was taped on the recording device. This tape was in the possession of the state from August 27, 1970, the date on which it was made (and the date of the defendants' arrest), until the state, over objection from defense counsel, introduced it at the trial of the defendants as rebuttal evidence.
As we noted above, the defendants had attempted through a motion for bill of particulars to obtain information as to the existence of any tape recorded inculpatory statements and to have such statements produced or copied. The state, however, did not reveal that they were in possession of the taped statements of the defendants. Rather, the state sought to keep the existence of the taped statement unknown to defendants and their counsel. This was accomplished by answering the request in the motion for bill of particulars as was stated in the outset of this opinion.[1]
*109 In this manner the state effectively prevented the defendants from learning of the existence of the recording. Defense counsel, acting on the premise that the state would squarely meet the request made in the motion for bill of particulars, were lulled, by way of a half truthful response, into the impression that the state had no statement in its possession which was discoverable prior to trial by the defendant. Defense counsel had requested in the motion for bill of particulars to be informed of the existence of any taped confession or inculpatory statement obtained by the state or a representative of the state. In response to this request the state replied that the defendants had made no statements subsequent to their arrest. In an abstract logical analysis, this reply would be truthful. However, when it is considered in the context of the request made in the motion for bill of particulars and the obvious intent of defense counsel to obtain any discoverable material, it is an unfair response because it created the impression that the state had in its possession, no written or recorded statements of the defendants subject to pre-trial discovery. However, as we will hereinafter establish, the recorded statement was subject to pre-trial inspection and the state's actions violated defendants' right to a pre-trial inspection thereof.
In State v. Dorsey, 207 La. 928, 22 So.2d 273 (1945) this court established the rule that a defendant in a criminal proceeding is entitled upon request to a pre-trial inspection of any written confession or inculpatory statement alleged to have been made by him and which is in the possession of the state. In that case we reversed the conviction on the ground that the defendant was denied the right to a pre-trial inspection of his written confession. We held:
"Under the provisions of the Constitution of the United States and this State, every accused is entitled to and is guaranteed a fair trial, and to deny his counsel a pre-trial inspection of [the] accused's written confession is, in our opinion, tantamount to depriving such accused of a fair trial, and is in violation of his constitutional rights."
In State v. Hall, 253 La. 425, 218 So.2d 320 (1969) we extended the rule of the Dorsey case to an electronically recorded video tape confession. We also held there that an oral confession was not within the Dorsey rule.
We find no difficulty in holding in the instant case that because there was a recorded statement, i. e., physical evidence of the confession or inculpatory statement in the possession of the state (and since the substance of the recorded statement, as we hereinafter find, is an inculpatory statement and/or confession), the recording was subject to pre-trial inspection by defense counsel.
The state at the trial defended its course of conduct in keeping the existence of the recording unknown to the defendants and their counsel by advancing the argument that the statements which were obtained from the defendants were oral and thus not subject to pre-trial inspection. The contention was made that it was not the recorded statement which the state intended to offer into evidence. Rather, the state contended that what they originally intended to offer into evidence was the testimony of Ronnie Black, a police officer, who was on the receiving end of the transmitter which was hidden on Lambert, which testimony would consist of inculpatory statements made by the defendants and "overheard" by Black. Thus, the state contended that only an oral confession was involved, and according to the State v. Hall decision, supra, it was not discoverable prior to trial.
Suffice it to say at this point that the state did not merely offer the testimony of the officer, but did, in fact, offer and have admitted into evidence the actual tape recording. Thus, the state's argument that only an oral confession was involved is without merit.
*110 We have, thus far, disposed of only one aspect of the disputed issue here. That is, we have found that an electronically recorded statement (without a video track) is in the same category as a written or video taped confession with respect to the right of pre-trial inspection by the defendant.
Furthermore, we expressly reject the argument made at trial by the Assistant District Attorney that, since the evidence he intended to introduce was to consist only of the testimony of the police officer as to what he "overheard" on the receiver, then this testimony is to be considered as merely evidence of an "oral" confession, therefore not subject to pre-trial discovery. If the conversation that the officer overheard was, in fact, recorded, then we hold that the recorded statement is subject to pre-trial inspection by the defendants.
It is now necessary to deal with the more important question presented here, that is, does the subject matter of the recorded conversation and the circumstances surrounding its recording bring it within the scope of the terms "inculpatory statement" or "confession" in the context of the defendants' right to have a pre-trial inspection thereof.
At the trial of this case and in brief to this court the state argued that the recorded statement was not subject to inspection for the reason that it was made during the continuing course of the commission of a criminal conspiracy to damage property, rather than subsequent thereto. The Assistant District Attorney contends that at the time this tape was made the defendants were planning to damage other property under circumstances similar to those which were present in the crime charged, and that statements on the tape related to their continuing plans in this alleged general criminal conspiracy and are thus not "inculpatory statements". Cited as authority for this proposition by the state is the case of State v. Fink, 255 La. 385, 231 So.2d 360 (1970) in which this court held that a "confession" or "inculpatory statement" as envisioned by La.C.Cr.P. Art. 768 refers to "the out-of-court admission of incriminating facts made by a defendant after the crime has been committed. It relates to past events."
If the crime charged in the instant case were one of those crimes which the defendants were allegedly planning for the future, the state's argument would be correct. Additionally, were the defendants actually charged with a criminal conspiracy (relating to their conspiring to damage a number of different properties, the statements would have been made during the commission of the conspiracy and thus not within the category of "confession" or "inculpatory statement" as established in State v. Fink, supra. However, since the crime charged here occurred prior to the making of the statements, and a portion of the statements actually consisted of out of court admissions of incriminating facts relating to the crime charged and were made by the defendants after the commission of the crime charged, then the statements fall within the State v. Fink, supra, category, and are subject to pre-trial inspection.
Additionally, we find that the content of the statements is such that they are within the category of "confessions" or "inculpatory statements." The statements contain admissions involving the existence of criminal intent relating to the crime charged rather than mere admissions of fact which would tend to prove guilt for the crime charged. State v. Andrus, 250 La. 765, 199 So.2d 867 (1967), State v. Picton, 51 La.Ann. 624, 25 So. 375. Also, the fact that these statements were not obtained while the defendants were in the actual custody of the police, and would thus not be regarded as a confession in the traditional sense of that word, the fact remains that they are inculpatory as above defined and therefore within the Dorsey rule.
Thus, we are satisfied that the tape recording in the possession of the state *111 was subject to pre-trial discovery by the defendants. As we have demonstrated previously in this opinion, the state led defense counsel to believe that there were no such recordings subject to pre-trial inspection in the state's possession. Due to the fact that the state's conduct resulted in the denial of defendants' right to a pre-trial inspection, we hold that reversible error was committed in allowing the recording to be admitted into evidence and allowing the testimony of Ronnie Black who prior to the introduction of the recording merely repeated, in substance, the contents of the tape recording.
The fact that the state allowed the defendants to listen to the tape subsequent to the presentation of the state's case in chief has no effect upon our decision. At that point in the trial the substance of the inculpatory statements had already been introduced into evidence through the testimony of Ronnie Black, and defense counsel had no adequate means to effectively cross-examine this very damaging witness, concerning possibly exculpating facets of the recorded statement, or otherwise.
Moreover, in the early stages of the trial, the trial judge ruled pursuant to a request by defense counsel that "... if the state has any written, taped, or video tape statement taken subsequent to this offense that it should be made available to the defendants at this time." In defiance of this order which in no uncertain terms was applicable to the recorded statement, the Assistant District Attorney failed to reveal the existence of the recording in his possession. We assume he chose to rely on his own opinion professed in brief to this court that the tape was not subject to discovery, rather than imputing to him an intentional disregard of the express order of the trial judge.
Subsequent to the rendition of the order referred to above, the Assistant District Attorney stated categorically to the trial judge that he did not intend to introduce any tape into evidence. He stated that "all I have is what he [Ronnie Black] heard." This latter remark by the Assistant District Attorney caused the trial judge to believe that the conversation was not recorded. Thus he later denied defense counsel's reurged motion to inspect on the ground that the only evidence that the state had was the oral inculpatory statements (See State v. Hall, supra). This caused substantial prejudice to the defendants because during the cross-examination of all of the state's witnesses, defense counsel was unaware of the existence of the tape and were thus precluded from inquiring into this matter.
In order to avoid possible error in the event of a new trial arising out of the charges filed in this case, we also note that bill of exceptions No. 4 presents a serious issue warranting a brief discussion.
This bill was perfected when the trial judge at the outset of the trial allowed John Lambert, the alleged co-conspirator of the defendants who later successfully acted as an undercover agent for the state, to give hearsay testimony.
The hearsay testimony consisted of declarations made to Lambert by a Texas resident and alleged co-conspirator who was not on trial or charged with the defendants. Lambert was allowed to testify that this individual had related to him the details of an extraneous criminal act in which defendants and the individual had allegedly participated or were planning subsequent to the crime charged here.
The argument of the Assistant District Attorney in favor of the admissibility of this testimony is as follows: The defendants and the declarant were engaged in a criminal conspiracy to sabotage property in order to enhance their labor union's bargaining position. He (the Assistant District Attorney) conceded at trial that this subsequent conspiracy was unrelated to the crime charged in the instant case. He contends, however, that testimony relating to the criminal act committed pursuant to the subsequent conspiracy is admissible in the trial for the instant offense to prove guilty *112 knowledge, intent and system of the defendants under La.R.S. 15:445 and 446 because they were involved in both the charged crime and the subsequent crime established by hearsay. The Assistant District Attorney asserts that since the declarant was a co-conspirator of the defendants at that time, then under La.R.S. 15:455 defendants are bound by the declarant's admissions in furtherance of that conspiracy, and an objection of hearsay thereto will not lie.
Since we have disposed of this case on other grounds we need not decide the validity of the state's argument relating to the admissibility of this hearsay testimony regarding an unrelated criminal act. Suffice it to say that there is considerable doubt as to whether this hearsay testimony was admissible.
For the reasons herein assigned, the convictions and sentences are reversed and the case is remanded for a new trial.
SANDERS, C. J., dissents.
SUMMERS, J., dissents for the reasons assigned.
MARCUS, J., dissents.
SUMMERS, Justice (dissenting).
This case represents an expansion of the rule of pretrial discovery entitling the defense to evidence in the State's possession prior to trial. State v. Migliore, 261 La. 722, 260 So.2d 682 (1972); State v. Hall, 253 La. 425, 218 So.2d 320 (1969); State v. Dorsey, 207 La. 928, 22 So.2d 273 (1945). Today's decision represents a repudiation of this Court's often expressed determination not to extend the rule of pretrial discovery, and to leave the matter to the Legislature where the question properly belonged. State v. Hunter, 250 La. 295, 195 So.2d 273 (1967) and the numerous cases cited there.
I respectfully dissent.
NOTES
[1] "Defendants Woodward and Bendo made no inculpatory statements or confessions to the investigative authorities subsequent to their arrest." (Emphasis ours)