337 So.2d 1145 (1976)
STATE of Louisiana
v.
John PERKINS, Jr.
No. 57779.
Supreme Court of Louisiana.
October 6, 1976.
*1146 R. Harmon Drew, Drew, White, Drew & Drew, Minden, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Henry N. Brown, Jr., Dist. Atty., James S. Harris, Asst. Dist. Atty., for plaintiff-appellee.
SANDERS, Chief Justice.
On March 26, 1973, the defendant, John W. Perkins, Jr., allegedly sold two grams of hashish to Special Agent Danny R. Brown. A Bill of Information charged him with the distribution of a controlled dangerous substance, a violation of LSA-R.S. 40:966(A)(1).
After a trial on the merits, the jury returned a verdict of guilty as charged, and the judge sentenced defendant to five years at hard labor. Thereafter, this sentence was suspended and the defendant was placed on active probation for a period of three years with the condition that he serve ninety days in jail subject to work on parish improvements.
Defendant appeals, relying on thirteen assignments of error.

ASSIGNMENT OF ERROR NO. 1
Prior to trial, the defense filed a Motion to Quash the Bill of Information, alleging that LSA-R.S. 40:966, the statute under which he was charged, was unconstitutional; the trial court overruled this motion. There is no merit in the motion. We *1147 have previously upheld the constitutionality of LSA-R.S. 40:966. See State v. King, La., 322 So.2d 205 (1975); State v. Whitehurst, La., 319 So.2d 907 (1975); State v. Stetson, La., 317 So.2d 172 (1975). The federal courts have also sustained the constitutionality of this statute in Louisiana Affiliate of National Organization for Reform of Marijuana Laws (NORML) v. Guste, 380 F.Supp. 404 (E.D.La.1974), affirmed 511 F.2d 1400 (5th Cir. 1975), U.S. cert. denied 423 U.S. 867, 96 S.Ct. 129, 46 L.Ed.2d 96 (1975).
This assignment of error is without merit.

ASSIGNMENT OF ERROR NO. 2
The defendant complains of the court's overruling his amended Motion to Quash, which raised the question of the constitutionality of Louisiana's method of selecting women to serve on a jury. He bases this assignment of error on Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), holding Louisiana's system of excluding women from jury venires unless they volunteered unconstitutional.
Our most recent treatment of this issue was in State v. Simmons, La., 328 So.2d 149 (1976). There we reiterated our holding that the decision in Taylor v. Louisiana is not retroactive, stating:
"At any rate, Taylor v. Louisiana, 419 U.S. 522, 95 S.Ct. 692, 42 L.Ed.2d 690 (1975), relied on by defendant herein, does not apply retroactively to juries empanelled prior to January 27, 1975, the date of the Taylor decision. Daniel v. Louisiana, 420 U.S. 31, 95 S.Ct. 704, 42 L.Ed.2d 790 (1975); State v. Zeno, 322 So.2d 136 (La.1975); State v. King, 322 So.2d 205 (La.1975)."
In the instant case, since the jury was selected and sworn on December 9, 1974, the Taylor decision is inapplicable.
This assignment is without merit.

ASSIGNMENTS OF ERROR NOS. 3, 4 AND 8
Prior to trial, defense counsel filed a Motion for Production of Evidence and Confession requesting that the State be ordered
". . . to produce and permit the inspection of and copying or photographing by or on behalf of the defendant, all. . . written or stenographically recorded, or otherwise recorded, alleged statements or alleged confessions, whether signed or unsigned by the defendant. . . ."
In response, the State filed an answer wherein it stated:
"The State of Louisiana has no written or stenographically recorded, or otherwise recorded, statements or confessions signed or unsigned by the Defendant.
"All other items of evidence held by the State of Louisiana, consist of investigative reports and other items of evidence with which the State of Louisiana will prove its case, all of which is privileged information of the State and which is not discoverable by the Defendant under any guise."
Defense's objection arose when the State, in compliance with Louisiana Code of Criminal Procedure Article 768, advised the defendant in writing of its intent to introduce inculpatory statements into evidence.
At a hearing on defense's Motion to Suppress these statements, the special undercover agent who bought the hashish from the defendant testified as to the circumstances under which the contested statements were made:
"Q. When this transaction [the sale] was completed, Mr. Brown, what occurred at that time?
"A. Mr. Perkins voluntarily made a statement to me.
"Q. And what was that statement?
"A. He made the statement that in an answer to a question that I posed to him, how long had he been operating the station, he said approximately a month and the only reason that he had opened the station was that he could have an honest front because he felt that his dealing in dope was about to catch up to him." (Tr. 20-21).
*1148 His testimony further revealed that on the evening of the sale, he prepared a handwritten investigative report in which he included the above statement. He then sent this report to his office in Baton Rouge, where it was typed, a copy of which was forwarded to the District Attorney's office. The record indicates that the District Attorney's office had this typewritten report prior to the filing of the motion for disclosure.
The defendant contends firstly that the notice of intention given him in accordance with Louisiana Code of Criminal Procedure Article 768 was untimely since the case was well into trial when the notice was given. This contention lacks substance for that article merely requires the State to notify the defense prior to the State's opening statement. In the instant case, the State gave the notice the day before its opening statement. Hence, it was timely.
The second defense argument concerns the propriety of the court's ruling which allowed the State to introduce the statement made by the defendant to Agent Brown. The defendant contends that since the State's reply to the defense motion for discovery stated that it had ". . . no written or stenographically recorded, or otherwise recorded, statements or confessions signed or unsigned by the Defendant," it should be bound by the answer and, therefore, should not be allowed to use the said statement.
Initially, we address the question of defendant's entitlement to this statement in pre-trial discovery. Louisiana jurisprudence supports the proposition that a defendant in a criminal prosecution has no right of full pre-trial discovery. State v. Hunter, 250 La. 295, 195 So.2d 273 (1967); State v. Johnson, 249 La. 950, 192 So.2d 135 (1966), U.S. cert. denied 388 U.S. 923, 87 S.Ct. 2144, 18 L.Ed.2d 1374 (1967); State v. Pailet, 246 La. 483, 165 So.2d 294 (1964). This Court has made exceptions for written confessions (State v. Dorsey, 207 La. 928, 22 So.2d 273 (1945)), video-taped recordings of a confession (State v. Hall, 253 La. 425, 218 So.2d 320 (1969)), and tape recorded confessions (State v. Bendo, La., 281 So.2d 106 (1973)). However, we have repeatedly refused to extend these exceptions to include oral confessions or oral inculpatory statements. See State v. Major, La., 318 So.2d 19 (1975); State v. Watson, La., 301 So.2d 653 (1974); State v. Sears, La., 298 So.2d 814 (1974); State v. Lawrence, La., 294 So.2d 476 (1974); State v. McLeod, La., 271 So.2d 45 (1973); State v. Daniels, 262 La. 475, 263 So.2d 859 (1972), U.S. cert. denied 410 U.S. 944, 93 S.Ct. 1378, 35 L.Ed.2d 610 (1973).
Thus, the resolution of this issue depends on the classification of the oral statement ultimately reduced to writing by the undercover agent as an oral inculpatory statement or a written inculpatory statement. In State v. Hall, supra, this Court reasoned that to constitute a written inculpatory statement, the writing must be one to which the accused himself subscribes. Under this principle, we believe that the present statement must be classified as an oral one, since at no point did the defendant subscribe to the agent's written report. Hence, it is not subject to pre-trial discovery.
We must next inquire whether defendant was misled to his prejudice by the State's response to the Motion for Production of Evidence and Confession.
The leading case on this issue is State v. Boothe, La., 310 So.2d 826 (1975). In reversing the defendant's conviction, the Court held that it was prejudicial error for the trial court to allow the State to introduce an oral inculpatory statement due to the State's misrepresentation in its reply to defense's motion that it had "no confession, admission or adverse statement of the defendant." The Court reasoned that such a misrepresentation, though unintentional, caused the defense to be caught by surprise.
Defendant contends that the State's reply, which read that it had "no written or stenographically recorded, or otherwise recorded, statements or confession signed or unsigned by the Defendant" misled defendant as to the existence of the inculpatory statement.
*1149 Unlike the State's reply in Boothe, supra, the State's response here did not contain unqualified language that it had no such statements. The reply before us merely states that they were not in the possession of any "written or stenographically recorded, or otherwise recorded, statements or confessions signed or unsigned by the Defendant." This response does not imply that the State has no oral statements. We must reject defense allegations that the statement written by the special agent falls in the category of "otherwise recorded statements" for we believe that the term "otherwise recorded" used by the State referred to video-taped statements or to tape recorded statements in the light of our decisions in State v. Hall, supra, and State v. Bendo, supra.
Moreover, the State did reveal in their answer that they held investigative reports that they intended to use as evidence. It was in these very reports that Agent Brown had written the defendant's statements. Therefore, we hold that at no time did the State violate the principles announced in State v. Boothe, supra.
These assignments of error lack merit.

ASSIGNMENT OF ERROR NO. 5
While Agent Danny R. Brown was on the witness stand, the defendant objected to his testifying about incidents related to his investigation of the defendant since the agent had refreshed his memory from notes not made by himself.
On re-cross examination, the witness testified that on the night of the transaction with the defendant he wrote a report of his activities in the field as he is required to do. This report was then sent to his secretary in the Narcotics' Office. There it was typed, and a copy was sent to the District Attorney. It was from this typewritten report that the witness refreshed his memory.
The trial judge properly overruled the objection. LSA-R.S. 15:279 provides:
"A witness may be allowed to refresh his memory by reference to his testimony given on the preliminary examination, or at a coroner's investigation, or on a previous trial, or, for the purpose of refreshing his present memory a witness may examine memoranda, and it is immaterial by whom or when the memoranda were made, provided that, after such inspection, the witness can testify to the fact."
See State v. Lewis, La., 288 So.2d 348 (1974); State v. Barnes, 257 La. 1017, 245 So.2d 159 (1971).
This assignment of error is without merit.

ASSIGNMENTS OF ERROR NOS. 6 AND 7
These objections arose during the direct examination of Agent Brown when he explained the circumstances under which he came to know the defendant. Defendant contends that the State is bound by its Answer to the Bill of Particulars, and as such may not introduce any evidence of any occurrences prior to March 26, 1973, at 6 p.m., the time that the State in its answer pinpointed the offense.
In State v. Nance, La., 315 So.2d 695 (1975), we described the function of a Bill of Particulars as follows:
"The purpose of the bill of particulars is to more fully inform the defendant of the nature and cause of the charge against him and to provide him with sufficient information before trial to properly prepare his defense. It cannot be used, however, to secure a pre-trial disclosure of the details of the State's evidence. State v. Rose, La., 271 So.2d 863 (1973)."
See also LSA-C.Cr.P. Art. 484, Official Revision Comment; State v. Major, supra, State v. Nelson, La., 306 So.2d 745 (1975).
The answer fixing the date and time of the offense does not have the legal effect of limiting the evidence to the exact moment of the offense.
This assignment lacks substance.

ASSIGNMENT OF ERROR NO. 9
A Bill of Exception was reserved to the ruling of the court that Raymond Cooper was qualified as an expert in the field of marijuana identification.
*1150 On direct examination, he testified that he has a B.S. degree in agronomy and a Master of Science degree in Microbiology, both received from Louisiana Tech. He has trained for two years in the Northwest Louisiana Criminalistics Laboratory under the director. Ninety-five percent of his case work has been in the identification of marijuana. Numerous courts have accepted him as an expert witness in the field of marijuana identification.
In State v. Gomez, La., 319 So.2d 424 (1975), we said:
"Whether a witness offered by one of the parties qualifies as an expert is a question of fact to be decided by the judge. He has wide discretion to accept or reject the witness' qualifications, and his decision in the matter will not be disturbed on appeal absent manifest error. State v. Ledet, 298 So.2d 761 (La.1974); State v. Richmond, 278 So.2d 17 (La.1973); State v. Sinclair, 258 La. 84, 245 So.2d 365 (1971)."
See also State v. Rogers, La., 324 So.2d 358 (1975), and the cases cited therein.
We find no error in the ruling of the trial judge.
This assignment of error is without merit.

ASSIGNMENTS OF ERROR NOS. 10 AND 11
The defendant contends firstly, that it was error to allow the two grams of hashish purchased from the defendant into evidence when a complete chain of custody had not been established, and secondly, that it was error to allow the transfer receipt issued by Mr. Cooper at the lab when he received the marijuana into evidence when a signature on it was not positively identified.
In identifying the envelope of hashish, Agent Brown testified that after the sale he placed the two clear pieces of cellophane containing the hashish in his shirt pocket. He removed them that night when he was making his report and placed them in a Louisiana State Police evidence envelope, filled out the front of the envelope and then placed the envelope in his briefcase. The next morning he submitted it to the crime lab in Shreveport. Mr. Cooper testified that it was he who received the envelope, and that upon its receipt he signed, dated, and assigned a case number to the envelope. He then signed the receipt in question. It was placed into the evidence locker until he conducted his examination. His further testimony revealed that after the tests were run, he placed the plastic containers, which also bore the number assigned the envelope and Mr. Cooper's initials, back into the envelope, taped and stapled it, and then returned it to the evidence locker. When the envelope was retrieved from the evidence locker by Mr. Cooper, he kept it in his possession until the day before trial, when he handed it to the District Attorney.
In State v. Dotson, 260 La. 471, 256 So.2d 594 (1971), U.S. cert. denied 409 U.S. 913, 93 S.Ct. 242, 34 L.Ed.2d 173 (1972), this Court stated:
"To admit demonstrative evidence at a trial, the law requires that the object be identified. The identification can be visual, that is, by testimony at the trial that the object exhibited is the one related to the case. It can also be identified by chain of custody, that is, by establishing the custody of the object from the time it was seized to the time it is offered in evidence.
"The law does not require that the evidence as to custody eliminate all possibility that the object has been altered. For admission, it suffices if the custodial evidence establishes that it is more probable than not that the object is the one connected with the case. A preponderance of the evidence is sufficient. State v. Coleman, 254 La. 264, 223 So.2d 402; State v. Martin, 250 La. 705, 198 So.2d 897; State v. Bertrand, 247 La. 232, 170 So.2d 386."
Addressing ourselves to the question of admissibility of the receipt given at the lab, we find that since Mr. Cooper testified that it was his signature that appeared on it, the receipt was admissible under the rules announced in Dotson, supra. The fact *1151 that there was no proof as to the authenticity of Agent Brown's signature does not render it inadmissible. In our opinion, the foundation was sufficient.
These assignments of error are without merit.

ASSIGNMENT OF ERROR NO. 12
Defendant complains of the judge's overruling his Motion in Arrest of Judgment. Since the contentions asserted in his motion are the same as those rejected in Assignments of Error Nos. 1, 2, 3, 4, 5, 6, 7, and 8, we find this assignment of error also devoid of any substance.

ASSIGNMENT OF ERROR NO. 13
Defense submits that the court erred in not sustaining his Motion for a New Trial. By this motion he argues that the State has not met the burden of proof that it is required to meet; in essence his allegation is that there is a lack of evidence to support the defendant's conviction.
In State v. Williams, La., 310 So.2d 513 (1975), we stated:
"The motions for a new trial are without merit for the same reasons. The motions for a new trial are based on the lack of evidence to support a conviction. For appellate purposes, this does not raise a reviewable question of law unless there is a total lack of evidence to prove the crime or an essential element of it. State v. Collins, 306 So.2d 662 (La.1975); State v. Cade, 244 La. 534, 153 So.2d 382 (1963)."
After a study of the record of this case, we cannot say that there is a total lack of evidence to support the conviction.
This assignment of error is without merit.
For the reasons assigned, the conviction and sentence are affirmed.
DENNIS, J., concurs, being of the opinion that the state's response to defendant's request for statements may have been misleading. See State v. Boothe, 310 So.2d 826 (La.1975). However, I cannot say the majority's interpretation is unreasonable given the present state of the law. But I believe we should comprehensively re-examine this entire area so as to formulate rules fair to the state and defense which do not depend on hair-splitting, artificial distinctions.