349 So.2d 250 (1977)
STATE of Louisiana
v.
Percy HODGES, Sr.
No. 58882.
Supreme Court of Louisiana.
June 20, 1977.
Rehearing Denied September 2, 1977.
*252 Elmer R. Tapper, William P. Schuler, Chalmette, for defendant-appellant.
William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Leander H. Perez, Jr., Dist. Atty., Gilbert V. Andry, III, Asst. Dist. Atty., for plaintiff-appellee.
SANDERS, Chief Justice.
The State charged Percy Hodges with the second degree murder of his wife, Gloria Hodges, a violation of LSA-R.S. 14:30.1. After a trial, the jury found the defendant guilty as charged. The court sentenced Hodges to life imprisonment, without benefit of parole, probation, or suspension of sentence for twenty years.
Defendant appeals his conviction and sentence, relying upon fifteen assignments of error.
The facts surrounding the shooting of defendant's wife are:
On September 4, 1975, defendant returned home shortly after 10 p. m. to find his wife dismantling his bed. His eighteen-year-old son, Percy, Jr., Shamanda, a sixteen-year-old daughter, and Carla, fourteen, were helping their mother when defendant entered his bedroom. His wife and youngest daughter verbally attacked him.
Defendant, a St. Bernard Parish deputy sheriff, was bringing in his police pistol from the glove compartment of his car and had it in his hand pointed at the floor.
His wife informed him that he was not sleeping there anymore. Daughter Carla chided that he should be ashamed of himself. Defendant slapped Carla's face. His wife lunged at him. She tripped over Shamanda's leg and fell forward to the floor. Defendant testified that while he parried backwards, the gun in his hand accidentally discharged and struck his wife. The State successfully maintained that defendant intentionally shot and killed her.

ASSIGNMENTS OF ERROR NOS. 1, 2, AND 6
These three assignments of error concern defendant's November 20, 1975 requested oyer and pre-trial inspection of "any and all *253 oral [and] written confessions, statements and/or admissions" made by him. The State answered that it was in possession of a statement made by defendant, but that the defense was not entitled to further information. On April 19, 1976, however, the State advised defense counsel at a hearing that in preparing the original answer, it had mistakenly stated that it was in possession of a statement made by defendant. That statement was actually a statement made by defendant's son, also named Percy Hodges (Jr.). At that hearing, the State amended its answer to read, "No, the State is not in possession of a written statement." The State reasserted that the defense was not entitled to the remaining information requested. Defense counsel announced that he was satisfied with that portion of the answer relating to oral statements. However, he later explained that he thought that no oral statements existed.
Prior to the commencement of trial on May 11, 1976, the State notified defense counsel of its intent to introduce an oral inculpatory statement made by defendant. Defense counsel objected on the basis of the State's earlier answer to his prayer for oyer, which he allegedly construed as negating the existence of oral statements.
At trial, when the statement was introduced into evidence, defendant objected again. However, the trial court admitted his statement into evidence.
Defendant argues that State v. Boothe, La., 310 So.2d 826 (1975), requires that a defendant be notified upon request of the existence, if not the content, of an oral statement.
In State v. Boothe, supra, we reversed a conviction because of the State's "patent misrepresentation" that no confession or inculpatory statement existed. Contrary to defendant's contention, we specifically did not consider the pre-trial discovery of the contents of the oral confession when requested in a bill of particulars or in a prayer for oyer.
In the instant case, although a misunderstanding may have occurred, it was not the result of the State's intentionally misrepresenting the nonexistence of oral inculpatory statements. The State specifically corrected its answer to read, "No, the State is not in possession of a written statement." It originally answered that it was in possession of a statement by the defendant. The confusion arose logically from a statement made by Percy Hodges, Jr., defendant's son. The State's original answer, although incorrect, was not intentionally misleading. Moreover, the mistaken information was corrected at the hearing. There the State admitted that it was not in possession of a written statement.
Defense counsel's misunderstanding did not result from the State's bad faith misrepresentation, but from its good faith attempt to correct an innocent mistake which arose from a confusing situation of having a written statement from one Percy Hodges, Jr.
A criminal defendant in Louisiana has only a limited right of pre-trial discovery, and while written confessions are discoverable, oral inculpatory statements are not. State v. Perkins, La., 337 So.2d 1145 (1976); State v. Major, La., 318 So.2d 19 (1975); State v. Watson, La., 301 So.2d 653 (1974); State v. Lawrence, La., 294 So.2d 476 (1974); State v. McLeod, La., 271 So.2d 45 (1973).
Defendant advocates an extension of the rule which allows discovery of written confessions to include oral confessions. The defendant in State v. Watson, La., 301 So.2d 653 (1974), advanced a similar argument. Therein, we stated:
"Pretrial inspection of evidence, even of confessions, is not a question of constitutional proportions. Cicenia v. Lagay, 357 U.S. 504, 78 S.Ct. 1297, 2 L.Ed.2d 1523 (1958); Leland v. State of Oregon, 343 U.S. 790, 72 S.Ct. 1002, 96 L.Ed. 1302 (1952); Welch v. Beto, 234 F.Supp. 484 (S.D.Tex.1964); Mears v. State, 83 Nev. 3, 422 P.2d 230 (1967) cert. den. 389 U.S. 888, 88 S.Ct. 124, 19 L.Ed.2d 188, reh. den. 389 U.S. 945, 88 S.Ct. 299, 19 L.Ed.2d 303. See annotation at 7 A.L.R.3d 8. There is no statute requiring the production of *254 `oral confessions.' Probably for the reason that the management of a scheme requiring such production would be difficult and complicated, Louisiana courts have consistently refused to extend the rule for production to oral statements of the accused."
Assignments of Error Nos. 1, 2, and 6 are without merit.

ASSIGNMENT OF ERROR NO. 3
In Assignment of Error No. 3, defendant complains that the trial court erred in denying his prayer for oyer requesting "access to an examination by counsel, [to] examine all physical evidence taken from the accused or allegedly used by the accused in the commission of the alleged offense, so that they may have the opportunity of countering any expert testimony offered by the prosecution." Herein, he specifically complains of the denial of the examination of the gun which shot and killed his wife.
In State v. Collins, La., 308 So.2d 263 (1975), we held:
"As a general proposition the State is not required to produce the physical evidence it intends to use at the trial. Exceptions to this rule have recognized the right of a defendant to view and copy his written confession in the possession of the prosecutor, State v. Dorsey, 207 La. 928, 22 So.2d 273 (1945); to obtain production of a taped confession, State v. Hall, 253 La. 425, 218 So.2d 320 (1969); or some of the confiscated narcotic evidence in a narcotic prosecution, State v. Migliore, 261 La. 722, 260 So.2d 682 (1970). When proper allegations support a finding that the defendant acted in self-defense and specifies that the weapon sought was used by the alleged victim against the defendant, supporting a claim of self-defense, we have required production of the weapon by the State. State v. Woodruff, 281 So.2d 95 (La.1973)."
None of the exceptions to the general rule are relevant here. However, while defendant acknowledges the general rule and its exceptions, he argues that Barnard v. Henderson, 514 F.2d 744 (5th Cir. 1975) supports his argument that due process requires an exception to the rule under the circumstances of his case. Therein, the Fifth Circuit Court of Appeals reversed a conviction wherein the defendant was denied access to the murder weapon for ballistics testing by an independent expert. The court stated:
"That this was not a frivolous request is evident since one of the most damaging pieces of evidence against Barnard was the identification of the murder bullet as having been fired by a .22 Ruger pistol traced to his possession. Seventy-five percent of this slug was destroyed and the identification was made on the remaining 25%. This fact alone raises the possibility that had Barnard been assisted by a ballistics expert of his own he may have been able to shake the identification testimony of the State's experts."
The case of Barnard v. Henderson, supra, is distinguishable. Here, no request was made in the trial court for testing by an expert. Indeed, it is admitted that a bullet from defendant's pistol struck his wife. The defense was that the pistol discharged accidentally. A short recess would have been adequate to determine whether the pistol had a "hair trigger," making it more susceptible to accidental discharge. The defense requested no such recess.
We have consistently declined under these circumstances to extend pre-trial discovery to include a defense inspection of weapons used by defendants in the commission of crimes. State v. Brumfield, La., 329 So.2d 181 (1976); State v. Roberts, La., 331 So.2d 11 (1976); State v. White, La., 321 So.2d 491 (1975).
Assignment of Error No. 3 is without merit.

ASSIGNMENTS OF ERROR NOS. 4 AND 5
In these two assignments, defendant complains that the trial court judge erred in failing to permit his pre-trial discovery of the coroner's report to the district attorney and the coroner's proces verbal.
*255 The coroner's written report to the district attorney, made pursuant to LSA-C.Cr.P. Art. 105, is intended to "provide the flow of information needed by the office of the district attorney in cases of apparent homicide and other apparent crimes involving medical evidence." LSA-C.Cr.P. Art. 105, Official Revision Comment (a). The comments following the article explain that only the proces verbal of the coroner's autopsy shall be open to public inspection and not his report to the district attorney. The coroner's report to the district attorney forms part of the prosecutor's private file and is not subject to discovery. See State v. Frezal, La., 278 So.2d 64 (1973); State v. Hunter, 250 La. 295, 195 So.2d 273 (1967).
However, the proces verbal of the autopsy is part of the public record. LSA-R.S. 33:1565 requires that the coroner furnish the proces verbal to the clerk of court within thirty days of conducting a post mortem examination. The coroner apparently failed to furnish the proces verbal to the clerk.
In light of the entire record, the error, if any, was harmless. See LSA-C.Cr.P. Art. 921.
Assignments of Error Nos. 4 and 5 are without merit.

ASSIGNMENT OF ERROR NO. 7
Herein defendant complains that the trial court erred in admitting into evidence inculpatory statements made by him to investigating officers, while in custody and before he received his Miranda warnings: (1) because of the failure of the officers to advise him of his Miranda rights and (2) because the State failed to disclose the existence of the statements in time for him to prepare a defense.
We have previously concluded that his second contention is without merit in Assignments of Error Nos. 1, 2, and 6.
We have consistently held that Miranda warnings are not essential pre-requisites to non-custodial, on-the-scene interrogation to determine facts relating to whether a crime has been committed or by whom. State v. Brown, La., 340 So.2d 1306 (1976); State v. Ned, La., 326 So.2d 477 (1976); State v. Corey, La., 339 So.2d 804 (1976).
In State v. Corey, supra, we applied the following objective criteria in determining the necessity of the warnings:
"(1) whether, prior to interrogation, probable cause existed to arrest the accused; (2) statements or actions by the police indicating an intention to hold or restrain him; (3) statements or actions by the accused indicating his reasonable belief that he is in custody; and (4) the extent to which the investigation has focused on the accused."
After receiving a police radio message that a shooting had taken place, Officer Giroir responded by driving to defendant's residence. Finding a gathering of people along the street, he inquired of Percy Hodges, a fellow officer of the Sheriff's office, "Who got shot?" Hodges responded that his wife got shot. Officer Giroir, then the only officer present on the scene, asked Hodges who shot his wife. Hodges replied that he shot his wife.
While this conversation was taking place between Officer Giroir, the first officer on the scene, and the defendant, Officer Kirch arrived and was informed by Officer Giroir that "Mr. Hodges shot his wife." Officer Kirch then asked, "Percy, what happened?" Defendant responded, "Oh, man, that woman. I don't know. Come on in." Both officers testified that Hodges then took them into the bedroom of his home where the shooting occurred. Officer Kirch did not proceed directly to the bedroom and instead checked out the kitchen to secure the premises. While Officer Giroir and the defendant were alone in defendant's bedroom, defendant began to explain his position in the room in relation to his wife's and to detail what occurred. From Officer Giroir's testimony, it appears that once the officer understood the inculpatory nature of defendant's statements, he interrupted him and stated, "Percy, you know you have a right to talk to a lawyer before you say anything. As a Deputy you know your *256 rights under the Miranda warning." Hodges said that he did. Officer Giroir continued to explain, "Percy, this shooting is going to be handled by a Captain. We ordered a Captain on the scene. I'm not going to handle this. I'm just the first car on the scene to try to prevent anybody else from getting shot." After this warning, Officer Giroir testified that Hodges proceeded to explain what happened.
When Officer Kirch completed his check of the kitchen, he joined Officer Giroir and the defendant in the bedroom where Hodges then explained his position in the room with respect to his wife's and stated that someone had called his wife and stated that defendant was hugging a woman and that his wife was cursing and screaming at him as a result. Officer Giroir stated that Hodges then told him "I shot her. I put the Big Five [an expression which developed from the five cent cost of a bullet] on her." Officer Giroir then asked the defendant if his wife had a weapon on her. Defendant replied either that she was going to get a knife or she had a knife.
Defendant complains of the admission of his statements to the officers that he shot his wife and his statement to Officer Kirch alluding to self defense.
Defendant's statements to Officers Giroir and Kirch immediately upon their arrival at the scene that he shot his wife were certainly precustodial and did not require Miranda warnings. Defendant began his narrative explanation of what happened to Officer Giroir upon their entry, at his own invitation and direction, into defendant's bedroom. When the officer realized how the shooting had occurred, he stopped defendant, stating, "Percy, you know you have a right to talk to a lawyer before you say anything. As a Deputy you know your rights under the Miranda warning." Hodges said that he did and then proceeded to explain in detail what had happened. Within moments, Officer Kirch entered the room, and defendant repeated his explanation, which included reference to a knife, supporting a self-defense theory. At the time defendant had already been warned by Officer Giroir that he had a right to talk to a lawyer before saying anything. The State, after giving notice of intent under LSA-C.Cr.P. Art. 768 to use defendant's statement to Officer Kirch, introduced that statement at trial.
In State v. Anderson, La., 332 So.2d 452 (1976), this Court held that a general inquiry by an officer at defendant's home during an investigation of his reported involvement in a shooting did not constitute custodial interrogation requiring Miranda warnings. The background facts in Anderson were these:
"On September 24, 1972, Deputy Sheriff Donald Miller received a call to come to Soileau's Grocery and Pool Hall. When he arrived, he talked to several people and received a report that a shooting had occurred in which Clifton Anderson, Sr., an acquaintance of his, was allegedly involved. The Deputy was at the grocery from five to ten minutes. Without further investigation, he drove to Anderson's home, arriving there in about fifteen minutes. After he knocked at the door, Anderson came outside. The Deputy Sheriff advised him that anything he said `would be . . . evidence against him.' In response to the Deputy Sheriff's general inquiry (what happened at Soileau's place?), Anderson freely related to Deputy Miller that he had shot at Clifton Williams, who was in a group `fixing to bunch up on his son,' and that he did not intend to shoot the lady. He added that the gun was with his son, but did not inform the Deputy of the whereabouts of his son. The Deputy's contact with the defendant at the home lasted about five minutes."
The Court stated:
"Both the state and federal jurisprudence support the view that a single, general inquiry made to the defendant at his home during an investigation and prior to his arrest does not constitute custodial interrogation. See, e. g., United States v. Sicilia, 475 F.2d 308 (CA7 1973); Simon v. United States, 421 F.2d 667 (CA9 1970), cert. denied, 398 U.S. 904, 90 *257 S.Ct. 1691, 26 L.Ed.2d 62; State v. Noriega, 6 Ariz.App. 428, 433 P.2d 281 (1967); People v. Fischetti, 47 Ill.2d 92, 264 N.E.2d 191 (1970); State v. McDonald, Iowa, 190 N.W.2d 402 (1971); Bernos v. State, 10 Md.App. 184, 268 A.2d 568 (1970); People v. P., 21 N.Y.2d 1, 286 N.Y.S.2d 225, 233 N.E.2d 255 (1967); State v. Crossen, 10 Or.App. 442, 499 P.2d 1357 (1972); Ison v. State, 281 Ala. 189, 200 So.2d 511 (1967); Stout v. State, 244 Ark. 676, 426 S.W.2d 800 (1968); People v. Routt, 100 Ill.App.2d 388, 241 N.E.2d 206 (1968); Annot., Custodial InterrogationMiranda Rule, 31 A.L.R.3d 565, at 587-595."
We conclude that the defendant's statements to the officers inside of his home were part of a general inquiry and pre-custodial, requiring no Miranda warnings. Thus, the trial court properly admitted defendant's statement to Officer Kirch into evidence.
Assignment of Error No. 7 is without merit.

ASSIGNMENTS OF ERROR NOS. 8 AND 14
In these assignments of error, defendant complains that the trial court erred in denying his motions for a directed verdict and for a new trial. He alleges that the State failed to prove necessary elements of the crime: the cause of the victim's death and the defendant's responsibility therefor.
The State charged defendant with the September 4, 1975 murder of his wife and brought defendant to trial in May of 1975. By Act No. 527 of 1975, the legislature amended LSA-C.Cr.P. Art. 778 by eliminating the directed verdict in cases triable by jury. The effective date of that amendment is September 12, 1975. Defendant submits that the amendment abolishing the directed verdict is a substantive change and, therefore, inapplicable here since the crime occurred prior to the amendment.
This Court has previously rejected defendant's argument. We have held the amendment procedural in nature and thus applicable to all trials held after its effective date. State v. Marmillion, La., 339 So.2d 788 (1976); State v. Clark, La., 340 So.2d 208 (1976); State v. Marks, La., 337 So.2d 1177 (1976). The trial court properly denied defendant's motion for a directed verdict.
In reviewing denials of motions for new trials based on the total lack of evidence of an essential element of an offense, this Court's review is limited to determining whether there is some evidence of each element of that offense. State v. Skelton, La., 340 So.2d 256 (1976); State v. Ledet, La., 337 So.2d 1126 (1976); State v. Collins, La., 306 So.2d 662 (1975).
A fair reading of the evidence adduced at the trial on the merits discloses that: the victim was in good health immediately before the shooting; by his own admission, the defendant shot the victim; after the gun discharged, the victim exclaimed that she was shot; as a result of the gunshot wound, bystanders rushed the victim to the hospital; physicians made all medical attempts to save the victim's life and necessarily removed the damaged organs; after the physician's life saving efforts, only the probable, not exact, location of the bullet's entrance wound could be detected through post mortem examination.
After reviewing the evidence, we find, as did the trial court, that there is some evidence that the defendant shot the victim and as a result of the bullet wound she died. Hence, the trial court properly denied the motion for a new trial.
Assignments of Error Nos. 8 and 14 are without merit.

ASSIGNMENTS OF ERROR NOS. 9 AND 10
In these two assignments, defendant complains of the State's failure to present rebuttal evidence, after laying a foundation therefor during the cross examination of the defendant and one of his witnesses, that the defendant did pull a gun on others besides the victim.
The questions propounded to defendant and the answers elicited were:

*258 "Q. You didn't tell Captain Riechert that you shot to scare your daughter off?
"A. I didn't shoot to scare my daughter off. My daughter came across the street and she hit at me. She went around the house. And I went to pick upI thought she was running to pick up the gun.
"Q. And the gun went off accidentally?
"A. The gun went off.
"Q. So when Captain Reichert says you told him that you shot the gun in the ground to scare your daughter off, he's lying?
"A. I didn't told him."
(Vol. III, pp. 294-295)
Contrary to defendant's allegation, the State did present evidence to contradict defendant's answers. During the State's examination of Captain Riechert, the State asked:
"Q. Did he tell you any circumstances surrounding the firing of the second shot?
"A. Yes sir.
"Q. What did he tell you?
"A. He stated that his daughter had come outside and slapped him and he shot the gun in the ground to scare her away because he didn't want to hurt her."
(Vol. III, pp. 192-193)
It was, therefore, unnecessary that the State recall Officer Riechert on rebuttal to offer this same testimony.
The questions propounded to defendant's witness and the answers elicited were:
"Q. You said that Percy never gave anybody any trouble. Did you ever hear about Percy pulling a gun on anyone?
"A. No, sir. I never heard that.
"Q. Specifically did you ever hear of him pulling a gun on a State Trooper or a Deputy Sheriff in Plaquemines Parish?
"A. No, sir, I didn't hear that.
"Q. Did you ever hear of him pulling a gun on [a] St. Bernard Parish Deputy?
"A. No, sir."
(Vol. III, pp. 229-230)
In this interrogation, we find that the State did not actually lay an impeachment foundation. The cross-examination was unrelated to impeachment.
The defendant's reliance upon State v. Guagliardo, 146 La. 949, 84 So. 216 (1920) is misplaced. In Guagliardo, the State laid specific foundations for impeaching witnesses by referring to prior statements, times, places, and persons to whom made, and further announced to the court and to the jury that it intended to impeach the denials of the witness. During rebuttal, the impeaching witnesses were not called. In closing argument, the District Attorney stated that he considered it unnecessary to call the witnesses, leaving the jury with the impression that he could have made good his impeachment.
Assignments of Error Nos. 9 and 10 are without merit.

ASSIGNMENT OF ERROR NO. 11
In Assignment of Error No. 11, the defendant complains that the trial court erred in sustaining the State's objection to defendant's reading the penalty provision of LSA-R.S. 14:30.1, the second degree murder statute under which defendant was charged. Under the statute, a life sentence for second degree murder is mandatory, upon the jury's return of a guilty verdict. The judge has no sentencing discretion.
In State v. Harris, 258 La. 720, 247 So.2d 847 (1971), we rejected an identical contention that the trial court erred in not allowing defense counsel to read to the jury in his closing argument the penalty provisions of the criminal statute under which he was charged. Therein we stated:
". . . [S]entence regulations form no part of the applicable law to be argued by counsel before the jury. To allow argument of these matters would inject irrelevant considerations into the jury's deliberations as to guilt.
"The prevailing rule is that when the penalty is the responsibility of the judge alone, the sentencing law is an improper *259 subject for argument to the jury. Abney v. State, 123 Miss. 546, 86 So. 341; 53 Am.Jur., Trial, § 467, p. 373. The supporting decisions from other jurisdictions are collated in the Annotation, Argument to JuryLaw or Lawbooks, 67 A.L.R.2d 245, 294. These decisions are based upon the sound principle that legal matters irrelevant to guilt should not be pressed upon the jury."
More recently, we rejected this same contention in State v. Chatman, La., 337 So.2d 1106 (1976). In conformity with our jurisprudence,[1] we again reject this argument.
Assignment of Error No. 11 is without merit.

ASSIGNMENT OF ERROR NO. 12
In Assignment of Error No. 12, the defendant complains that a pistol never introduced in evidence was placed by the State on a table in view of the jury.
At the beginning of the trial, all of the tangible evidence was brought together to the courtroom and placed on the Clerk's desk. These items included a knife, bullets, a 32-caliber pistol, the homicide weapon, and a larger pistol found near the scene of the crime. The defense made no objection to the placing of these objects on the desk. During the State's case, all the tangible evidence was introduced except the larger pistol. After the State closed its case, the defense objected to the presence of the gun in view of the jury.
The 32-caliber pistol, admittedly the homicide weapon, was introduced in evidence. The defense made no objection to the initial placement of the tangible evidence, though none of the items had as yet been admitted at the trial. Hence, since all items remained in place for a substantial time without objection, the trial judge correctly overruled the belated objection. See State v. Mitchell, La., 319 So.2d 357 (1975). Moreover, since the homicide weapon itself was introduced, no prejudice resulted from the mere presence of the other pistol in the courtroom. See State v. Burnette, La., 337 So.2d 1096 (1976).
Assignment of Error No. 12 is without merit.

ASSIGNMENT OF ERROR NO. 13
In Assignment of Error No. 13, defendant alleges that the trial court erred in refusing the jury's request for additional charges concerning manslaughter.
During the jury deliberations, the jury communicated to the deputy assigned to them their desire for a clarification of the manslaughter charge. The deputy contacted Chief Deputy Wallace Ansardi before forwarding the request to the trial judge. Deputy Ansardi spoke to the jury spokesman, who informed him that the jury requested a copy of the charge. Chief Deputy Ansardi replied that "it would be up to the judge to give it to them." The other deputy went to the trial judge to relay the jury's request for the charge. However, in the interim between the time the trial judge learned of their request and instructed the deputy to return the jury to the courtroom for further instructions, the jurors reached their final verdict. When the deputy returned to the jury deliberation room to get the jury, they indicated that they no longer needed additional instructions for they had reached a verdict.
*260 We conclude that the trial judge did not refuse to give additional instructions to the jury, as alleged by the defendant. Rather, we find that the jury withdrew its request as preparations were being made to supply the additional instructions.
Assignment of Error No. 13 is without merit.

ASSIGNMENT OF ERROR NO. 15
In Assignment of Error No. 15, defendant argues that permitting anything less than a unanimous verdict in such a serious case is contrary to the obligations assumed by the State of Louisiana in the Enabling Act for the Admission of Louisiana into the Union which mandated the common law right to trial by jury.
Act of Congress February 20, 1811, 2 U.S. Stat. 641 § 3 provides:[2]

"Provided, the constitution to be formed, in virtue of the authority herein given, shall be republican, and consistent with the constitution of the United States; that it shall contain the fundamental principles of civil and religious liberty; that it shall secure to the citizen the trial by jury in all criminal cases, and the privilege of the writ of habeas corpus, conformable to the provisions of the constitution of the United States;" [Emphasis added.]
The Sixth Amendment to the United States Constitution provides:
"In all criminal prosecutions, the accused shall enjoy the right to a speedy and public trial, by an impartial jury of the State and district wherein the crime shall have been committed, which district shall have been previously ascertained by law, and to be informed of the nature and cause of the accusation; to be confronted with the witnesses against him; to have compulsory process for obtaining Witnesses in his favor, and to have the Assistance of Counsel for his defence."
Defendant argues that Louisiana's jury practice is not in conformity with the provisions of the constitution of the United States as Louisiana does not require a unanimous jury verdict to convict in such a case as this. Louisiana Constitution, Article I, Section 17 (1974); LSA-C.Cr.P. Art. 782.
We disagree. We find that the Act of Congress February 20, 1811, 2 U.S.Stat. 641, an act for the admission of the State of Louisiana into the Union, does not require that the provisions of our state constitution and statutes be identical with the federal unanimous jury requirements.
We conclude that by the terms of the act of admission, our state constitution and statutes need only conform to the requirements of the United States Constitution. There is no constitutional requirement that one be convicted by a unanimous jury. As defendant notes in his brief, the United States Supreme Court has upheld Louisiana's less-than-unanimous verdicts. Johnson v. United States, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972). This Court has consistently held that our jury rule requiring the concurrence of nine members of a twelve-member jury for a verdict neither violates the Sixth Amendment to the United States Constitution nor the Fourteenth Amendment. The concurrence of nine jurors guarantees the accused a fair trial and due process of law. State v. Dillon, 260 La. 215, 255 So.2d 745 (1971); State v. Jones, 257 La. 966, 244 So.2d 849 (1971); State v. Caston, 256 La. 459, 236 So.2d 800 (1970).
Assignment of Error No. 15 is without merit.
For the reasons assigned, the conviction and sentence are affirmed.
TATE, J., concurs and assigns reasons.
CALOGERO, J., concurs with reasons.
DENNIS, J., concurs for reasons stated by CALOGERO, J.
TATE, Justice, concurring.
While I concur in the affirmance, some comment should be made as to the needless and erroneous denial of pre-trial oyer and examination of (a) the gun used by the *261 accused, which resulted in his wife's death, and (b) the coroner's proces verbal.

(1)
The trial court should have allowed the accused pre-trial examination and testing of this weapon. (After all, the gun was taken from him by use of the state's omnipotent discovery power of seizing evidence.) Such examination and testing may indeed have been helpful to the accused in preparing his defense that the admitted shooting was accidental, when the gun went off. See, e. g., Barnard v. Henderson, 514 F.2d 744 (CA 5, 1975), reversing this court for a failure to allow such pre-trial testing.
I am not prepared, however, to say that, after conviction, the failure to have accorded pre-trial examination is reversible error under the present circumstance. No real showing is made, as the majority suggests, that such testing was of a nature that could not have been accomplished at the trial without disruption or delay by witnesses easily available there.
Further, the blanket pre-trial request was to examine "all evidence taken from the accused or allegedly used by the accused in the commission of an alleged offense, so that [counsel] may have the opportunity of countering any expert testimony offered by the prosecution." The focus of the motion was not to request examination of the evidence for purposes of preparing an affirmative defense, but rather merely to counter any expert testimony if offered by the stateand none was, as to the gun.
For these reasons, I am unwilling to hold that the erroneous denial of pre-trial examination of the weapon is reversible.

(2)
Likewise, I believe the trial court clearly should have afforded the accused access to the coroner's proces verbal, which is required to be prepared by that official, La.R.S. 33:1565. The coroner's proces verbal is admissible at the trial as "competent evidence of death and the cause thereof." La.C.Cr.P. art. 105.
The coroner is required to furnish a copy of the proces verbal to the clerk of court within thirty days of conducting a post-mortem examination, which copy will be of public record. La.R.S. 33:1565. The coroner did not do so in this case.
If (as I understand the record) the prosecutor had a copy of this proces verbal, supposedly of a public record (yet withheld by another state officer contrary to law), it seems to me that fundamental fairness requires the prosecutor to permit access by the accused to this (supposedly public) record admissible in evidence against him.
State v. Cripps, 259 La. 403, 250 So.2d 382 (1971) is not authority to the contrary: There, the proces verbal was of record. Under that circumstance, we held non-erroneous a refusal by the trial court to order the prosecutor to furnish an accused a copy of a document of public record to which the accused had easy access.
The state cannot deny the accused access to a document in its possession, access to which the accused is by law entitled but has in fact been denied. The state should not be able to claim that a governmental denial of lawful access is excused by the breach of legal duty owed by another local public official, who cooperatively furnishes the information to the prosecutor (his fellow official of government), but who fails to furnish it to the public (including the accused) in violation of law.
I would be prepared to dissent because of this wrongful denial of access to evidence admissible against the accused to which he is lawfully entitled, if the slightest prejudice were shown or even claimed. However, in the present case, the defendant's shooting of his wife as the cause of her death is not disputedthe defense is only that the gun went off accidentally.
I therefore cannot say that the accused was prejudiced by this wrongful denial to him by the state of a public record to which he was by law entitled. I therefore concur, despite the clearly erroneous ruling herein stated.
CALOGERO, Justice, concurring.
I join Justice TATE in his concurring opinion, and I concur additionally for the reasons which follow.
*262 In assignment of error number eleven, defendant complains that he should have been able to make known to the jury the mandatory penalty for the offense with which he was charged, second degree murder. In State v. Prater, 337 So.2d 1107 (La.1976) the majority of this Court agreed that "a charge and argument may be required and permitted, despite Blackwell, when the statutory offense requires a mandatory legislative penalty, with no judicial discretion as to its imposition following verdict." 337 So.2d at 1110 (Tate, J., concurring).[1] Because defendant Hodges' trial took place in May of 1976, prior to the Prater change which was made prospective, the trial court did not err in its decision not to allow defense counsel to inform the jurors of the mandatory sentence imposed upon conviction.
It is for these reasons that I concur. I do not believe as the majority does that this case is distinguishable from Prater simply because closing argument rather than request for jury instruction was the means by which defense counsel sought to apprise the jury of the law's penalty provisions.
NOTES
[1] In State v. Prater, La., 337 So.2d 1107 (1976), the majority of this Court held that a trial court's denial of defendant's request that the penalty provision of the statute under which he was charged be included in the judge's charge to the jury was proper. However, three justices dissented and a fourth justice concurred. In his concurrence, he stated that "in any case tried after the finality of the present decision I shall regard the bench and bar as on notice that, in the view of a majority of this court, a charge and argument may be required and permitted, despite Blackwell [State v. Blackwell, La., 298 So.2d 798], when the statutory offense requires a mandatory legislative penalty, with no judicial discretion as to its imposition following verdict. Thus, to this extent at least, Blackwell may be regarded as overruled prospectively by the present opinion."

Since the judge's jury charge was at issue, Prater is distinguishable. The instant case involves the reading of the penalty provision by defense counsel during his closing argument. In the light of the concurring opinion, it should also be noted that the present trial occurred prior to that decision.
[2] This act is reproduced in Vol. 3 of the Louisiana Constitution (1974) at p. 22.
[1] This court majority was made up of four concurring/dissenting Justices. See also State v. Unzueta, 337 So.2d 1102 (La.1976); State v. Chatman, 337 So.2d 1106 (La.1976). The prospective application of the rule which was announced took effect from the date of finality of the Prater decision, September 27, 1976.