390 So.2d 1253 (1980)
STATE of Louisiana
v.
Thomas GREEN.
No. 67165.
Supreme Court of Louisiana.
October 6, 1980.
Rehearing Denied November 10, 1980.
Dissenting Opinion December 15, 1980.
*1255 William J. Guste, Jr., Atty. Gen., Barbara Rutledge, Asst. Atty. Gen., Harry F. Connick, Dist. Atty., John H. Craft, Asst. Dist. Atty., New Orleans, for plaintiff-appellee.
*1256 Lloyd Frischhertz, New Orleans, for defendant-appellant.
DIXON, Chief Justice.
The defendant Thomas Green was charged by bill of information with armed robbery (R.S. 14:64). A first trial, held January 4, 1979, ended in a mistrial because of jury deadlock. After a second trial on March 12, 1979, a jury of twelve found the defendant guilty as charged. He was sentenced to twelve years imprisonment at hard labor. Defendant appeals, giving nineteen assignments of error.
On July 24, 1978, at about 10:00 a. m., a young man entered Nicole's One-Stop Grocery at 3145 Clouet Street, pointed a gun at the cashier, Betty Shipman, and demanded money. The robber emptied the cash register into a brown paper bag and fled. At about the same time, two New Orleans police officers, Officer Romallis Stukes and Sergeant Charles Hinton, were two blocks away from the store at the defendant's residence, 3026 Metropolitan, investigating a robbery reported by the defendant the day before. The officers wanted to show Green photographs of suspects, but found no one home. They noticed that Green's home had been ransacked and they stopped to ask a neighbor his whereabouts. They were about to enter their car and drive away when two men came from around the corner running in their direction. One turned and ran down an alley, but the other, who was carrying a brown paper bag, ran onto the porch of a house three or four houses down from where the policemen were standing. The police approached him, identified themselves and asked him his name and why he was running. The man told them he was Green and said there was no particular reason for his running. He stated that he had just come from the store where he had cashed his mother's check. He then said that he had cashed his check, then that he was going to cash his check. At one point, in response to the question, "What's in the bag?" Green dropped the bag. Officer Stukes testified that the bag opened when it fell and he could see that it contained a lot of balled up money, food stamps and paper, just by peering into it. When asked about the other person who was running with him, Green denied any knowledge of him. The officers then asked Green to get in the car and go back where he came from to find out what was going on. Green claimed that he was forced into the car, but the officers pointed out that the back doors were never locked. As they drove around the corner they noticed a small crowd in front of the grocery store. Learning that the store had been robbed, the police asked Ms. Shipman to look at Green in the car. She identified him as the robber, but at the trial could not identify him, and admitted that her on-the-scene identification was not certain. The police then advised Green of his rights and told him he was under arrest.

Assignments of Error Nos. 1, 2 and 4
Defendant contends that the trial court erred in failing to suppress evidence seized from him, statements made by him and an identification made by the victim under suggestive circumstances. He argues that since the police had no right to stop and question him, all evidence and statements obtained were inadmissible at trial. In response to the state's characterization of the stop as a "field interview," defense counsel cites Brown v. Texas, 443 U.S. 47, 99 S.Ct. 2637, 61 L.Ed.2d 357 (1979), in support of his contention that the police had no right to approach the defendant. In Brown, the United States Supreme Court reversed the conviction of a defendant who was arrested for failing to identify himself when stopped by the police. A Texas law made it a crime for a person to refuse to give his name and address to a policeman who lawfully stopped and requested the information. The Supreme Court held that: "When the officers detained appellant for the purpose of requiring him to identify himself, they performed a seizure of his person subject to the requirements of the Fourth Amendment." 443 U.S. at 50, 99 S.Ct. at 2640, 61 L.Ed.2d at 361. The Court found no circumstances preceding the officers' detention of the defendant creating a reasonable *1257 suspicion that he was engaged in criminal conduct. The officers had stated that the man looked suspicious, but they were unable to point to any facts supporting that conclusion.
Here, the officers did not suspect defendant Green of any crime at the time that they first approached him. Officer Stukes testified:
"... we wanted to know why he was running, what was the problem.
. . . . .
We didn't suspect him of anything at the time.
. . . . .
... it was out of curiosity to see just what was happening."
This court has stated in State v. Shy, 373 So.2d 145, 147 (La.1979) that:
"... police officers do not need probable cause to arrest or reasonable cause to detain each time they attempt to converse with a citizen. The mere fact that the police approach a citizen and address him does not compel that citizen to respond to the inquiries or comply with their requests; legally, nothing prevents his choosing not to answer and walking away...."
The officers here, unlike those in Brown, did not try to compel the defendant to answer their questions. There is no indication in the record that Green was reluctant to identify himself or that he refused to answer the policemen's questions. Moreover, there were circumstances preceding the stop which justified the questioning. While the officers did not suspect Green of criminal activity initially, their curiosity was piqued by the sight of the two young men running. Officer Stukes, who was familiar with the area, testified that this was unusual activity for the time of day. The officers had come to the area to investigate a robbery reported by Green; they had found his house open and ransacked. They were attempting to locate him when they saw the men approaching, and it was reasonable for them to speak to the defendant when they found out that he was the man they were seeking. Once he began to speak, his nervousness and contradictory responses aroused their suspicions; these suspicions were further increased when he dropped the bag and they discerned the money and papers in it. This court has recognized that police officers cannot arbitrarily and capriciously infringe on an individual's right to be left alone; they "cannot actively create `street encounters' unless they have knowledge of suspicious facts and circumstances ..." State v. Saia, 302 So.2d 869, 873 (La.1974). In this case the police did not actively create an encounter or unjustifiably intrude on the defendant's privacy. The initial questioning was lawful, and the evidence was admissible. If the dropping of the sack of money was an abandonment, it could be lawfully seized. State v. Ryan, 358 So.2d 1274 (La.1978). If the dropping was accidental, the police had the right to look at the open sack of money and papers, and prudence required further inquiry. See State v. Mitchell, 344 So.2d 1026 (La.1977).
Defendant further contends that his answers to the police inquiries were inadmissible because he was not informed of his Miranda rights or of his rights under C.Cr.P. 218.1. There was no custodial interrogation until after defendant was identified at the store, at which time defendant was given the Miranda warnings. Therefore, the conversation between the police and defendant was admissible.
Defendant also alleges that Ms. Shipman's identification of him should have been suppressed, as it was made under suggestive circumstances and in a custodial setting. The cashier never made a positive identification of the defendant so there was no real identification to suppress. The cashier said at both the motion to suppress hearing and at the trial that she was not sure that Green was the man who robbed her.
These assignments lack merit.

Assignment of Error No. 3
Defendant contends that the trial court erred in permitting statements made *1258 by him to the police at the time of the initial stop to be introduced into evidence at the trial, because the state failed to give written notice of its intent to use such statements, as required by C.Cr.P. 768. Defense counsel admits that he did get such notice before the first trial, but he argues that the absence of notice at the second trial caused him to change his trial strategy to the prejudice of defendant.
In State v. Hills, 337 So.2d 1155 (La.1976), this court held that article 768 did not require a second notice reiterating the state's intention to use inculpatory statements and that defendant was not prejudiced by the state's failure to reiterate the notice previously given. In this case, there is no indication that the failure to give the second notice substantially prejudiced defendant's case.
This assignment is without merit.

Assignment of Error No. 5
The defendant claims that the trial court erred in sustaining the prosecutor's objection to defense counsel's opening statement. The state's objection was that defense counsel was going beyond the scope of an opening statement by telling the jury that the state would not be able to prove the guilt of the defendant.
The trial judge's ruling may have been unduly restrictive on defense counsel, but the record does not indicate that the defendant's right to a fair trial was substantially prejudiced by the ruling.
This assignment lacks merit.

Assignments of Error Nos. 6 and 7
Defendant alleges that the verdict was contrary to the law and the evidence. He asserts that no rational trier of fact could have found, on the basis of the evidence presented, that defendant was guilty of the crime charged beyond a reasonable doubt, or that he was armed with a dangerous weapon, an essential element of the crime of armed robbery.
The defendant was found running with a bag containing money and papers stolen in an armed robbery. The store owner testified that $298.00 and some change was taken in the robbery; that was the amount found in the defendant's possession. A receipt found in the bag was identified by the store owner as belonging to the store. The cashier said she was robbed at gunpoint by a young black man who was not wearing a shirt. The defendant had no shirt on. The defendant's only explanation was that another man had dropped the bag while trying to jump a fence and he had picked it up; the men then chased him around the corner. The jury apparently did not find this to be a reasonable hypothesis of innocence. The evidence supports a finding of guilt beyond a reasonable doubt.
These assignments of error lack merit.

Assignments of Error Nos. 8 and 9
Defendant contends that the trial court should not have let Officer Stukes testify about the defendant's conversation with the police because it constituted hearsay. (R.S. 15:434). At trial defense counsel objected to the admission of the remarks but did not specify a ground for his objection. Thus, the argument that the testimony includes hearsay is new and is not properly before this court. Grounds for objection must be stated at the time of the ruling and matters not urged at trial cannot be urged for the first time on appeal. (C.Cr.P. 841). Defense counsel alleged in a previous assignment of error that the statements were inculpatory; so characterized, they would be admissible as a recognized exception to the hearsay rule. State v. Trull, 382 So.2d 960 (La.1980); State v. Godeaux, 378 So.2d 941 (La.1979).
These assignments lack merit.

Assignment of Error No. 10
Defense counsel contends that the trial court erred in sustaining the state's objection to his cross-examination of Officer Stukes. The grocery store owner, Ms. Carroll, had testified that $298.00 and some cents had been taken in the robbery. In an attempt to impeach her testimony, defense *1259 counsel asked Officer Stukes how much money Ms. Carroll had reported stolen.
The state argued that the defense did not lay a proper foundation for impeaching Ms. Carroll's testimony because it never asked her whether or to whom she had made a report.[1] Even if the statement was improperly excluded, the error was harmless as the matter was not crucial to determination of the defendant's guilt or innocence. The exact amount of money taken was not a critical issue; rather, a receipt made out to the grocery which was found in the bag linked the bag with the robbery.
This assignment is without merit.

Assignment of Error No. 11
Defendant argues that the prosecution's redirect examination of Officer Stukes raised issues that were prejudicial. Defense counsel specifically objected to testimony that the person running behind the defendant was found hiding under a house and was arrested. He claims that this testimony was designed to implant in the jury's mind the idea that the second man was guilty and that the defendant was guilty by association.
As the state notes, defense counsel had already questioned Officer Stukes extensively about this second man during his cross-examination and tried to suggest that the second person was chasing rather than running with the defendant. Therefore, the state's questioning was not improper in its scope. (R.S. 15:281).[2] Moreover, as the state points out, the information that the second man had been arrested was not necessarily prejudicial to the defendant. It could have helped his case by suggesting that another suspect had been found in the neighborhood or by corroborating the defendant's story that he had merely picked up the bag when it was dropped by one of two men who were trying to jump a fence and that he was then chased by one of them. The arrest of the second person was also relevant to the defendant's allegation that he did not know the person running behind him. This court has consistently held that the trial judge is vested with wide discretion in determining the relevance of evidence, and his ruling will not be disturbed on appeal in the absence of a clear showing of abuse of discretion. State v. Drew, 360 So.2d 500 (La.1978); State v. King, 355 So.2d 1305 (La.1978). There is no indication that the trial court abused its discretion here.
There is no merit in this assignment.

Assignments of Error Nos. 12 and 13
Defense counsel contends that the trial court erred in not excluding argumentative and prejudicial statements made by the prosecutor during her cross-examination of the defendant. Defense counsel particularly objected to the prosecutor's comment, "All right, which is right, what you are telling us now, or what you told people then?" Defendant had made contradictory statements as to when he first learned that a robbery had been committed and the prosecutor was trying to find out which statement was correct. While much of the prosecutor's cross-examination was aimed at impeaching the defendant, it did not contain any particularly prejudicial or inflammatory remarks.
Defense counsel also alleges that the trial court erred when it permitted the state to read from the transcript of the first trial a portion of defendant's statement regarding *1260 a gun. However, defense counsel does not argue this error, and an examination of the statement does not suggest that it was prejudicial or inappropriate. Moreover, the trial court stopped the prosecutor and informed her that a proper foundation had not been laid and the issue was dropped.
These assignments of error lack merit.

Assignment of Error No. 14
Defendant contends that the trial court improperly allowed the prosecutor to cross-examine him regarding his association with the other person arrested in the robbery investigation. Defendant's objection that the testimony was irrelevant was overruled. The questioning was intended to clarify the defendant's claim that he did not know the other person running behind him and to impeach him by showing that he had made prior inconsistent statements. The trial court did not abuse its wide discretion in determining that the testimony was relevant.
This assignment is without merit.

Assignment of Error No. 15
Defendant argues that the trial court erroneously prohibited him from impeaching state's witness Ms. Carroll when she was called by the state in rebuttal. The defendant had stated that he had never been in Nicole's One-Stop Grocery before the robbery. Ms. Carroll then testified that she had seen the defendant in the store on two occasions before the robbery. When defense counsel tried again to raise the issue of how much money Ms. Carroll had reported as stolen, the state objected that this was improper cross-examination on rebuttal. The court sustained the exception and told defense counsel to limit his cross-examination to the matter discussed on rebuttal. The control of evidence presented on rebuttal is within the sound discretion of the trial judge, State v. Hills, 354 So.2d 186 (La.1977), and there was no abuse of discretion here.
This assignment lacks merit.

Assignment of Error No. 16
Defendant contends that the trial court erred in allowing the state, over defense counsel's objections, to present matters in its closing rebuttal arguments which were not raised by the defense in its closing argument. (C.Cr.P. 774). Defense counsel specifically objects to a remark by the prosecutor that Officer Stukes was very conscientious in trying to locate the defendant regarding the robbery he had reported.
Since a full transcript of defense counsel's closing argument is not included, it is impossible to determine if the statement exceeds the scope of proper rebuttal. However, even if the comment went beyond the permissible scope, it does not appear so prejudicial as to constitute reversible error. The prosecutor's comment was a permissible inference from Officer Stukes' testimony and does not justify reversal.
This assignment is without merit.

Assignment of Error No. 17
Defendant asserts that the prosecution for armed robbery was improperly initiated by bill of information rather than by grand jury indictment. He argues that a possible ninety-nine year sentence without benefit of probation, parole, or suspension of sentence is tantamount to life imprisonment and therefore the charge should be instituted by grand jury indictment. In State v. Williams, 341 So.2d 370 (La.1976), this court considered this matter and held that the institution of a prosecution for armed robbery by bill of information is proper. Defense counsel contends that the Williams decision is wrong and violates Article 1, § 15 of the Louisiana Constitution of 1974; however, he offers no new considerations to persuade this court to change its opinion.
This assignment has no merit.

Assignment of Error No. 18
Defendant states that his conviction by a non-unanimous jury is unconstitutional. He argues that the United States Supreme Court decision in Burch v. Louisiana, 441 U.S. 130, 99 S.Ct. 1623, 60 L.Ed.2d *1261 96 (1979), holding that a conviction by a non-unanimous six person jury for a non-petty offense violates an individual's right to trial by jury, also applies to twelve person juries. He contends that C.Cr.P. 782 is unconstitutional. The United States Supreme Court's opinion in Burch is specifically limited to six person juries. That court has upheld the validity of non-unanimous verdicts for twelve person juries in Johnson v. Louisiana, 406 U.S. 356, 92 S.Ct. 1620, 32 L.Ed.2d 152 (1972) (nine-three verdict) and Apodaca v. Oregon, 406 U.S. 404, 92 S.Ct. 1628, 32 L.Ed.2d 184 (1972) (ten-two verdict). This court has also held that the Louisiana jury rule violates neither the Sixth nor the Fourteenth Amendments. State v. Hodges, 349 So.2d 250 (La.1977); State v. Morgan, 315 So.2d 632 (La.1975).
This assignment lacks merit.

Assignment of Error No. 19
Defendant contends that the sentence of twelve years imprisonment is excessive and was imposed without proper regard to C.Cr.P. 894.1.[3] That article establishes guidelines designed to help the courts "adapt the sentence to the offender as well as the offense." State v. Jackson, 360 So.2d 842, 844 (La.1978). This court has held that where a judge imposes a sentence without adequately complying with the requirements of article 894.1, the sentence will be vacated and the case remanded for resentencing. State v. Touchet, 372 So.2d 1184 (La.1979); State v. Cox, 369 So.2d 118 (La. 1979).
In this case, the trial judge stated that he had ordered and reviewed a presentence investigation report. This report revealed that there had been no charges against the defendant as a juvenile and no convictions against him as an adult. He noted a charge of burglary had been brought against the defendant in California but there was no disposition in the case. The judge said that the presentence report indicated to him that the defendant should be incarcerated for a substantial length of time. He said that he was taking into consideration letters recommending mercy from two ministers and the assistant principal of the defendant's high school in imposing a sentence of twelve years imprisonment. He stated that a lesser sentence would deprecate the seriousness of the crime. We find that the sentence is appropriate and that the trial judge adequately complied with the requirements of C.Cr.P. 894.1.
*1262 Defendant's conviction and sentence are affirmed.
DENNIS, J., dissents with reasons.
DENNIS, Justice, dissenting.
I respectfully dissent. When the police officers placed Thomas Green and the bag he had been carrying in the police car without Green's consent, there unquestionably occurred a seizure for Fourth Amendment purposes. See Dunaway v. New York, 442 U.S. 200, 207, 99 S.Ct. 2248, 2253, 60 L.Ed.2d 824 (1979); Terry v. Ohio, 392 U.S. 1, 16, 88 S.Ct. 1868, 1877, 20 L.Ed.2d 889 (1968). It is clear that the seizure was more than a Terry stop and could be supported only by probable cause. Dunaway v. New York, supra, 442 U.S. at 216, 99 S.Ct. at 2258.
NOTES
[1] "Whenever the credibility of a witness is to be impeached by proof of any statement made by him contradictory to his testimony, he must first be asked whether he has made such statement, and his attention must be called to the time, place and circumstances, and to the person to whom the alleged statement was made, in order that the witness may have an opportunity of explaining that which is prima facie contradictory. If the witness does not distinctly admit making such statement, evidence that he did make it is admissible." R.S. 15:493.
[2] "The redirect examination must be confined to the subject matter of the cross-examination and to the explanation of statements elicited on cross-examination; but the application of this rule is within the discretion of the trial judge, provided that the opportunity be not denied to recross on the new matter brought out on the redirect." R.S. 15:281.
[3] "A. When a defendant has been convicted of a felony or misdemeanor, the court should impose a sentence of imprisonment if:

(1) There is an undue risk that during the period of a suspended sentence or probation the defendant will commit another crime;
(2) The defendant is in need of correctional treatment or a custodial environment that can be provided most effectively by his commitment to an institution; or
(3) A lesser sentence will deprecate the seriousness of the defendant's crime.
B. The following grounds, while not controlling the discretion of the court, shall be accorded weight in its determination of suspension of sentence or probation:
(1) The defendant's criminal conduct neither caused nor threatened serious harm;
(2) The defendant did not contemplate that his criminal conduct would cause or threaten serious harm;
(3) The defendant acted under strong provocation;
(4) There was substantial grounds tending to excuse or justify the defendant's criminal conduct, though failing to establish a defense;
(5) The victim of the defendant's criminal conduct induced or facilitated its commission;
(6) The defendant has compensated or will compensate the victim of his criminal conduct for the damage or injury that he sustained;
(7) The defendant has no history of prior delinquency or criminal activity or has led a law-abiding life for a substantial period of time before the commission of the instant crime;
(8) The defendant's criminal conduct was the result of circumstances unlikely to recur;
(9) The character and attitudes of the defendant indicate that he is unlikely to commit another crime;
(10) The defendant is particularly likely to respond affirmatively to probationary treatment; and
(11) The imprisonment of the defendant would entail excessive hardship to himself or his dependents.
C. The court shall state for the record the considerations taken into account and the factual basis therefor in imposing sentence." C.Cr.P. 894.1.