545 So.2d 1228 (1989)
STATE of Louisiana, Appellee,
v.
Emily JACKSON, Appellant.
No. 20550-KA.
Court of Appeal of Louisiana, Second Circuit.
June 14, 1989.
*1229 Jones and Smith by Benjamin Jones, Monroe, for appellant.
William J. Guste, Jr., Atty. Gen., James A. Norris, Jr., Dist. Atty., Joseph T. Mickel, Asst. Dist. Atty., Monroe, for appellee.
Before FRED W. JONES, Jr., SEXTON and LINDSAY, JJ.
FRED W. JONES, Jr., Judge.
Defendant Emily Jackson was tried and convicted of possession of marijuana with intent to distribute, in violation of La.R.S. 40:966. She was sentenced to serve five years at hard labor and to pay a fine of $15,000 or in default to serve one year in jail. The hard labor portion of the sentence was suspended and the defendant was given five years probation with one year in the parish jail as a condition. The defendant appealed reserving five assignments of error. As these assignments of error are without merit, the defendant's conviction and sentence are affirmed.
Factual Context
At some point between June 8 and June 10, 1983, the Monroe Metro Narcotics Unit was telephoned by a paid confidential informant (CI) who reported that he had seen 20 pounds of marijuana in a residence in South Monroe. The CI said he thought the residence belonged to someone named "Minnie Jackson" and the marijuana belonged to someone he knew as "Iceberg". Officers were able to identify the residence through the directions given by the CI. They also observed two vacant houses, one on each side of the residence, and a silver automobile parked outside of the residence. These findings were consistent with the information provided by the CI. The officers then obtained a search warrant and searched the residence located at 100 Farmers Circle in Monroe on June 10, 1983. The residence belonged to defendant Emily Jackson and her husband Allen.
During the search, officers found a plastic Zip-Loc bag containing about 10.3 ounces of marijuana located in an open cardboard box on a chair in the kitchen, and a small amount of hashish in a baggie in the *1230 master bedroom. In addition, marijuana gleanings were found in the attic of the residence.
Defendant's purse was also searched and various items were seized from it, including $15,326 in cash, two receipts, dated April 28, 1983, and May 26, 1983, and made out to Albert Matthews for rental of 106 South First Street in Monroe, various court notices and bond receipts referring to Albert Matthews, and a bill of sale and temporary motor vehicle registration for a Honda motorcycle, showing a sale price of $3,339.39. These items were made out to Emily Jackson, whose address was listed as 2108 Standifer. In addition, officers seized a small black book identified as a vest pocket calendar showing columns of figures in large numbers.
Four days after the search of the Jackson residence, the same CI informed Metro Narcotics that Albert Matthews had a significant quantity of marijuana in a U-Haul truck parked at 2108 Standifer. Officers obtained a search warrant and the following evidence was seized during the resulting search of the trailer: marijuana gleanings, found inside furniture in the truck, a cigarette lighter with the name "Iceberg" engraved upon it, a looseleaf notebook and paper, and two partially burned marijuana cigarettes, which were found in the cab of the truck. The notebook contained columns of figures which almost exactly matched those in the vest pocket calendar seized from defendant's purse.
The defendant Jackson was arrested and charged by bill of information with possession of marijuana with intent to distribute. Another bill of information was filed on September 14, 1983 charging Matthews, a/k/a "Iceberg" and Jackson with possession with intent to distribute. An amended bill of information was filed on March 21, 1988, to extend the dates of the commission of the offense through June 14, 1983.
The trial proceeding of defendant extended from July 27, 1983 when the bill of information was filed through July 1, 1988 when she was sentenced. Defendant filed numerous pre-trial motions, including motions to suppress evidence, a motion for severance and objection to improper joinder, motion for a speedy trial, and numerous motions for continuance. Defendant and Matthews were tried separately.
At trial, the State elicited testimony to show the circumstances surrounding the search and seizure of the Jackson residence and the U-Haul trailer at Matthews' residence. The State also introduced evidence showing the connection between the defendant and Albert Matthews, partly in the form of testimony concerning the correlation in figures between the books recovered from defendant's purse and the Haul trailer.
There was testimony that the plastic bag containing marijuana seized from the Jackson residence was sent to the FBI for fingerprint analysis after the removal of the marijuana and that Matthews' thumbprint was found on the bag.
Foley, a forensic document examiner, (handwriting expert) compared the four documents containing handwritten figures with handwriting exemplars of Albert Matthews and Emily Jackson. He found similarities in Jackson's exemplar and the two notebooks seized from the defendant's purse, and numerous similarities between Albert Matthews' writing and the notebook seized from the U-Haul trailer.
The State also elicited testimony from police officers regarding a comparison made between the documents seized from the Jackson purse and the documents seized from the U-Haul trailer. Extensive similarities were found in the computations.
The defendant was found guilty as charged by a verdict of 10-2. She was sentenced to serve five years at hard labor. The sentence was suspended, and she was placed on five year probation under special conditions. The conditions imposed included that she was to pay a $7500 fine and to serve one year in the parish jail. This appeal followed.
Motions To Suppress
Assignment of Error No. 1 relates to the trial court's denial of the defendant's motion to suppress evidence seized from *1231 her home pursuant to the execution of the search warrant. The defendant argues that the warrant authorizing the search was deficient because the supporting affidavit did not contain enough information for the magistrate to reasonably determine that there was probable cause to search.
The affidavit supporting the warrant was prepared primarily through information supplied to the officers by a confidential informant. It stated that on June 10, 1983, a confidential reliable informant contacted Investigator Carter and told him that within the last 48 hours he (the CI) had personally observed over 20 pounds of marijuana and more than one ounce of cocaine at a residence in Monroe. The CI particularly described the house as green in color and located between two vacant boarded houses. The CI also stated that a silver Oldsmobile 98 was parked outside the house. The CI gave explicit directions to the house and said that a female known to him as "Minnie Jackson" lived at the house and the contraband belonged to a black male known to him as "Iceberg."
The affidavit further stated that after receiving this information, Det. Bougere and Sgt. Toney drove to the residence described by the CI and verified much of the information provided. They found a house with green trim and a silver Oldsmobile parked in the carport. The house was between two vacant boarded houses. The car registration was checked and found to be in the name of Allen Jackson. Also, Louisiana Power and Light Co. was contacted, and its records reflected an Allen Jackson living at 100 Farmers Circle in Monroe, the address of the residence described in the affidavit.
The affidavit also stated that Det. Bougere had known the informant for ten months, and had received accurate information from him, resulting in two drug related arrests and one conviction. The CI had also purchased marijuana for Det. Bougere while under direct surveillance.
At the hearing on the motion to suppress, Detective Carter testified that he had assisted in the preparation of the warrant authorizing the search. He received the telephone call from the CI giving the information provided in the first paragraph of the affidavit. He did not question the CI regarding the circumstances surrounding his observation of the marijuana, but stated that no drug charges were pending against the CI at the time of the phone call.
Detective Bougere testified that he prepared the affidavit in support of the search warrant based upon information provided by Carter. He stated he had known the CI for about ten months prior to this incident, and that information received from this CI in the past had been trustworthy, and had resulted in two drug related arrests and one conviction. Carter said that he and Sgt. Toney, a deputy sheriff with the Ouachita Parish Sheriff's Department, went to the residence at 100 Farmers Circle and confirmed the description given by the CI prior to the execution of the affidavit.
Allen Jackson, defendant's husband, testified that while he was at home during the 48 hour period prior to the search, no one other than his mother-in-law had been present. He worked from 6:30 a.m. to 5:30 or 6:00 p.m., however, so he could not swear that no one was there while he was gone.
The defendant testified that she had minor surgery on the 8th and was restricted to bed on the 9th, the day before the search was conducted. She also stated that no one who could possibly be an informant had been in her house during that time. An attempt to burglarize her house was made on the 9th. She reported this to the Sheriff's department and an officer responded to the call.
After hearing this testimony, the trial court found that the items were seized pursuant to a valid search warrant and therefore admissible into evidence.
The second stage of the suppression hearing, concerning the admissibility of statements made by defendant at the time of the search, was held on September 27, 1983. Sgt. Toney testified that he advised the defendant of her Miranda rights, and she was neither threatened nor coerced into making any statement. He stated that when questioned about the money found in *1232 her purse, defendant first said that she and her husband were saving it to purchase a house. However, after her husband came in and denied knowledge of the money, she stated that she was holding it for Mrs. Alberta Matthews.
Detective Carter corroborated Toney's testimony. The court found the statements also admissible and denied the motion to suppress.
The defendant contends that as the CI did not provide the officers with any details of the circumstances surrounding the observation of the marijuana in the Jackson residence, the affidavit fails to comply with the two-prong test of Aguilar v. Texas, 378 U.S. 108, 84 S.Ct. 1509, 12 L.Ed.2d 723 (1964) and Spinelli v. United States, 393 U.S. 410, 89 S.Ct. 584, 21 L.Ed.2d 637 (1969), which is now part of the "totality of the circumstances test" enunciated in Illinois v. Gates, 462 U.S. 213, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983). Thus, it is argued, the affidavit in support of this warrant contains insufficient factual indicia of probable cause.
We disagree. The decision of the magistrate determining whether there is probable cause to search is entitled to significant deference by the reviewing court, and marginal cases should be resolved in favor of finding this assessment to be reasonable. State v. Rodrigue, 437 So.2d 830 (La.1983).
In Illinois v. Gates, supra, the Supreme Court stated:
"The task of the issuing magistrate is simply to make a practical, commonsense decision whether, given all the circumstances set forth in the affidavit before him, including the `veracity' and `basis of knowledge' of persons supplying hearsay information there is a fair probability that contraband or evidence of a crime will be found in a particular place. And the duty of a reviewing court is simply to ensure that the magistrate had a `substantial basis for ... conclude[ing] that probable cause existed."
In State v. Slaid, 508 So.2d 597 (La.App. 2d Cir.1987), writ denied, 513 So.2d 819 (La.1987), we held the reliability of three informants was established because of truthful information each had provided in the past, even though they never saw the particular contraband seized from the defendant's residence, but had only seen the defendant with a large quantity of marijuana. Defendant contends the fact that information given by this informant led to two drug related arrests and one conviction is not sufficient to establish his reliability. However, our Supreme Court has held that "[i]nformation concerning a prior accurate report given by the informant satisfactorily establishes the informant's reliability." (Emphasis supplied). State v. Humble, 309 So.2d 138, 140 (La.1975). See also: State v. Tilley, 525 So.2d 716 (La.App. 1st Cir. 1988); State v. Slaid, supra.
Furthermore, the informant's veracity, or reliability of the information provided by him, may be established by his direct personal observation. State v. Weinburg, 364 So.2d 964 (La.1978); State v. Tilley, supra.
In State v. Tilley, supra, the Court found the affidavit sufficient to support the issuance of the search warrant, and stated:
"The informant herein personally observed the presence of narcotics in the trunk of defendant's car. The informant, referred to as anonymous caller, was obviously known to Sergeant Vulgamore. He had previously given information to Sergeant Vulgamore which resulted in arrest. Sergeant Vulgamore drove by the address given to him by the informant and corroborated the presence of the described vehicle on the address premises. The sergeant recognized the vehicle, because it belonged to a reputed drug user and supplier."
Here, as in Tilley, the CI stated that he had personally observed the contraband in the defendant's residence. By using the directions to the residence given by the CI, the officers located and drove by the described residence and saw the vehicle described by the affiant on the premises. The affidavit in support of the search warrant also indicated that the CI had made a *1233 purchase of marijuana under the direct supervision of the officer. Thus, after examining the basis for the information and the informant's reliability under the totality of the circumstances, we find them to be adequately established.
However, even if the search warrant was invalid because of deficiencies in the affidavit, the evidence seized was admissible under the "good faith" exception to the exclusionary rule, which was established by the Supreme Court in U.S. v. Leon, 468 U.S. 897, 104 S.Ct. 3405, 82 L.Ed.2d 677 (1984). We recognized this exception in State v. Wood, 457 So.2d 206 (La.App. 2d Cir.1984), where we stated:
"The exclusionary rule should not be applied so as to bar the use in the prosecution's case-in-chief of evidence obtained by officers acting in an objectively reasonable good-faith reliance on a search warrant issued by a detached and neutral magistrate but ultimately found to be invalid."

* * * * * *
"The court enumerated four exceptions to the `good-faith' exception, or instances in which suppression `remains an appropriate remedy': 1) if the magistrate or judge in issuing a warrant was misled by information in an affidavit that the affiant knew was false or would have known was false except for this reckless disregard of the truth; 2) where the issuing magistrate wholly abandoned his detached and neutral judicial role; 3) where the warrant is `based on an affidavit so lacking in indicia of probable cause as to render official belief in its existence entirely unreasonable'; and 4) where the warrant is so facially deficient, i.e., fails to particularize the place to be searched or the things to be seized, that the executing officers cannot reasonably presume it to be valid."
The defendant claims in brief that Leon is inapplicable because it was decided while this case was still pending, and further asserts that Wood should be overruled. Although the search warrant was issued and the search was executed in 1983, this defendant was not brought to trial until 1987. Thus, this prosecution was pending when Leon was decided. However, the Supreme Court has held that all "new" rules of constitutional law must be applied to all cases still subject to direct review by that Court at the time the "new" decision is handed down. Shea v. Louisiana, 470 U.S. 51, 105 S.Ct. 1065, 84 L.Ed.2d 38 (1985). Therefore, as defendant's conviction was not yet final in 1984, the "good faith" exception is applicable to this case. The officers in this case relied upon the objective determination of the judge in issuing the search warrant. As there was no showing that any of the exceptions to Leon are present here, the seized evidence was admissible.
Since we find that the search was not unreasonable, the statements obtained from Mrs. Jackson during the search are also admissible. Therefore, the judge did not err in denying defendant's motion to suppress, and this assignment of error is without merit.
Defendant also contends that the evidence seized in the search of Matthews' trailer is irrelevant to the prosecution of her case, and should not have been admitted in her trial. We disagree. The trial court has wide discretion in determining the relevancy of evidence in criminal prosecutions, and its determination will not be overturned absent a clear abuse of discretion. State v. Allen, 440 So.2d 1330 (La. 1983); State v. West, 419 So.2d 868 (La. 1982).
The defendant was charged with possession of marijuana with intent to distribute. In order for the State to prove its case, it had to rely upon circumstantial evidence. The evidence seized from Matthews trailer consisted of marijuana gleanings, the engraved lighter, and the notebook containing the handwritten columns of figures matching those found in defendant's purse. This evidence connected Matthews to defendant and tends to make more probable than not their mutual participation in this criminal offense.
In State v. Johnson, 453 So.2d 279, 282 (La.App. 2d Cir.1984), we addressed the *1234 issue of whether actions of other persons could be relevant and material to the issue of guilt where three women were charged with theft:
"The defendant herself did not take enough meat to be valued at over $100. In order to establish facts indicating a felony theft of property amounting to a value of more than $100 under La.R.S. 14:67, the state had the burden of showing that all the persons involved in the crime were acting in concert in the commission of the crime. The actions of the other persons were clearly relevant to the charged offense. The defendant has failed to show that the trial court abused its wide discretion in determining issues of relevancy. Therefore, these assignments of error are without merit".
In this case, the State had the burden of proving that defendant had the specific intent to distribute the marijuana. The evidence linking her to Matthews was essential to this element of proof, as it tends to prove the existence of an illegal drug trafficking operation of which defendant was a participant. The evidence seized in the search of the U-Haul trailer is thus relevant to establish the existence and nature of a relationship between defendant and Matthews, and was therefore essential to establish defendant's intent to distribute. The defendant has failed to show that the trial court abused its wide discretion in ruling on the relevancy of evidence; therefore this assignment of error is without merit.
The defendant also asserts that the trial court erred in admitting testimony concerning a large sum of money seized at the Matthews residence in 1986 or 1987 in the absence of any continuing relationship between defendant and Matthews. This evidence was brought out on cross-examination, in order to rebut the testimony of a defense witness, Alberta Matthews, Matthews' grandmother, that some of the money seized in defendant's purse belonged to her.
In State v. Kelly, 456 So.2d 642, 649 (La.App. 2d Cir.1984), writ denied, 461 So.2d 312 (La.1984), we discussed the nature of rebuttal evidence, stating:
"Rebuttal evidence is that which is offered to explain, repel, counteract, or disprove facts given in evidence by the adverse party. La.R.S. 15:282. State v. Huizar, 414 So.2d 741 (La.1982); State v. Constantine, 364 So.2d 1011 (La.1978). Such evidence may be used to strengthen the state's original case. State v. Huizar, supra; State v. Howard, 120 La. 311, 45 So. 260 (1908). The determination of whether evidence is rebuttal evidence and hence, admissible, is an issue which is addressed to the sound discretion of the trial judge. State v. Huizar, supra; State v. Green, 390 So.2d 1253 (La.1980).

* * * * * *
The prosecution has the right to rebut the evidence adduced by the defendant. La.R.S. 15:282. However, this right is not unlimited in scope. The general rules of evidence also have application to determine the proper scope of cross-examination and rebuttal testimony. State v. Constantine, supra. The evidence must be relevant to a material issue in dispute. Matters which are logically relevant to issues before the jury should not be excluded merely because they show the accused has committed other offenses. State v. Herman, 358 So.2d 1282 (La.1978); State v. Moore, 278 So.2d 781 (La.1973)."
Also, in State v. Smith, 513 So.2d 438, 443 (La.App. 2d Cir.1987), we stated:
"Despite the general prohibition against other crimes evidence, there are different considerations in force when the defendant affirmatively raises specific issues of fact which the otherwise inadmissible evidence becomes necessary to rebut. See State v. Morris, 362 So.2d 1379 (La.1978); State v. Batiste, 363 So.2d 639 (La.1978) (on rehearing). By taking the stand, mentioning the prior incident and attempting to exculpate himself, he `opened the door' to the issue and entitled the state to contradict his account. State v. Kelly, 456 So.2d 642 (La.App. 2d Cir.1984), writ denied, 461 *1235 So.2d 312 (La.1984); State v. Scroggins, 465 So.2d 820 (La.App. 2d Cir.1985), writ granted on other grounds 469 So.2d 975 (La.1985), reconsider. denied, 472 So.2d 914 (La.1985).
Furthermore, the state has a broad right of cross-examination of the defendant, La.R.S. 15:462, as well as a right to impeach any witness, La.R.S. 15:484. When Smith took the stand with his exculpatory account of the Midway incident, the state carefully cross-examined him to see whether he would stand by his testimony, and then called a witness to contradict him. Cecil Harper's account of the Midway incident was significantly different from Smith's. This testimony was admissible to contradict Smith, rather than to prove the state's case. State v. Hatter, 338 So.2d 100 (La.1976); State v. Diggs, 261 La. 76, 259 So.2d 18 (1972)."
In this case, the defendant introduced the testimony of Alberta Matthews in an attempt to establish that the cash seized at the Jackson residence belonged to someone other than the defendant. The State was entitled to impeach this witness in order to contradict her testimony. This assignment of error is therefore without merit.
Sufficiency
In her second assignment of error defendant contends that the evidence was insufficient to sustain her conviction.
In order to satisfy due process standards, the record evidence, viewed in the light most favorable to the prosecution, must be sufficient for a rational juror (factfinder) to conclude that the essential elements of the crime were proven beyond a reasonable doubt. Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). La.C.Cr.P. Art. 821, added by Act. No. 144 of 1982, tracks the Jackson language in setting up a Louisiana standard pertaining to post-verdict motions for acquittal based upon insufficiency of the evidence.
The Jackson standard is applicable in cases involving both direct and circumstantial evidence. An appellate court reviewing the sufficiency of evidence in such cases must resolve any conflict in the direct evidence by viewing that evidence in the light most favorable to the prosecution. When the direct evidence is thus viewed, the facts established by the direct evidence and inferred from the circumstances established by that evidence must be sufficient for a rational trier-of-fact to conclude beyond a reasonable doubt that defendant was guilty of every essential element of the crime. State v. Sutton, 436 So.2d 471 (La.1983).
Circumstantial evidence is defined as evidence of acts or circumstances from which one might infer or conclude the existence of other connected facts. Circumstantial evidence consists of proof of collateral facts and circumstances from which the existence of the main fact may be inferred according to reason and common experience. State v. Austin, 399 So.2d 158 (La. 1981).
In all cases where an essential element of the crime is not proven by direct evidence, the Louisiana circumstantial evidence rule, La.R.S. 15:438, applies. As an evidentiary rule, it requires the factfinder, as well as the reviewer on appeal, to accept as proven all that the evidence tends to prove and to convict only if every reasonable hypothesis of innocence is excluded. Whether circumstantial evidence excludes every reasonable hypothesis of innocence presents a question of law. State v. Shapiro, 431 So.2d 372 (La.1982); State v. Hammontree, 363 So.2d 1364 (La.1978).
In this case, all the evidence presented was circumstantial. The evidence consisted of a large amount of unexplained cash (approximately $15,000) found in defendant's purse, 10.3 ounces of marijuana seized from her home; testimony of police officers that several hundred cigarettes could be made from this amount of the drug; Matthews' fingerprints found on the plastic bag containing that marijuana; ten boxes of plastic sandwich bags found in defendant's kitchen; various papers and documents relating to Matthews found in defendant's purse; and the striking similarities between the columns of figures in the notebooks seized from defendant and Matthews. In addition, there was a large *1236 square depressed area in the insulation of the attic, as if something rather heavy had recently been stored there. Marijuana gleanings were found in the insulation.
In State v. Sibley, 310 So.2d 100 (La. 1975) a quantity of marijuana sufficient to manufacture 600 cigarettes was found sufficient to infer possession with intent to distribute.
Here, in addition to the fairly large quantity of marijuana actually found (enough to make several hundred cigarettes) and the reasonable inference that much more had recently been stored in the attic, there was evidence of a large amount of unexplained cash seized from defendant's purse. Also, there was evidence of drug paraphernalia in the form of the ten boxes of sandwich baggies. Although defendant's husband testified that he works as a sales representative for the manufacturer of the bags and brought them home for his children to use, the jury obviously did not believe this. Additionally, the similarities in the columns of figures in the various books seized from the defendant and Matthews indicate the existence of a common enterprise.
The circumstantial evidence presented in this case is sufficient to allow the jury to infer the existence of the enterprise and thus the defendant's possession with intent to distribute. Therefore, this assignment of error is without merit.
Excessiveness Of Sentence
The defendant claims the five year hard labor suspended sentence conditioned on the defendant's serving one year in the parish jail is excessive. It is well-settled that the sentencing judge is given wide discretion in imposing a sentence within the statutory limits and such a sentence should not be set aside as excessive in the absence of a manifest abuse of discretion by the sentencing judge. State v. Square, 433 So.2d 104 (La.1983); State v. Brooks, 431 So.2d 865 (La.App. 2d Cir.1983); State v. Hammonds, 434 So.2d 452 (La.App. 2d Cir. 1983), writ denied, 439 So.2d 1074 (La. 1983).
The sentencing guidelines of La.C.Cr.P. Art. 894.1 provide the criteria to consider in determining whether a sentence is excessive. State v. Sepulvado, 367 So.2d 762 (La.1979); State v. Tully, 430 So.2d 124 (La.App. 2d Cir.1983), writ denied, 435 So.2d 438 (La.1983). While the trial judge need not articulate every aggravating and mitigating circumstance outlined in Art. 894.1, the record must reflect that he adequately considered these guidelines in particularizing the sentence to the defendant. State v. Nealy, 450 So.2d 634 (La.1984); State v. Knighton, 449 So.2d 1171 (La.App. 2d Cir.1984); State v. Smith, 433 So.2d 688 (La.1983); State v. Cunningham, 431 So.2d 854 (La.App. 2d Cir.1983), writ denied, 438 So.2d 1112 (La.1983).
A sentence is constitutionally excessive in violation of Louisiana Constitution of 1974 Art. 1, § 20 if the sentence is grossly out of proportion to the severity of the offense or nothing more than a needless and purposeless imposition of pain and suffering. State v. Bonanno, 384 So.2d 355 (La.1980); State v. Cunningham, supra.
Defendant argues that she has in effect already served five years of probation since her arrest occurred in June 1983 and she was not sentenced until July 1, 1988. She was not involved in criminal activity during this time. However, this factor was considered by the trial court. The court specifically found that there was not an undue risk that the defendant would commit another crime.
The court considered the factors of La.C. Cr.P. Art. 894.1 in determining the sentence imposed upon the defendant. The court stated specifically that he had considered all eleven factors. In mitigation, the court noted factors seven through eleven weighed heavily in the defendant's favor; and that defendant was married with two children. However, he stated his belief that the defendant was in need of some correctional treatment and that a lesser sentence would deprecate the seriousness of the crime. The court considered the defendant's involvement with Albert Isaac Matthews to be an aggravating factor. The court stated that the defendant's prior record consisted of two misdemeanors ten years ago.
*1237 The sentence of five years at hard labor, suspended, with five years probation conditioned upon the defendant serving one year in the parish jail, along with the imposition of $7500 fine is not clearly excessive.
Conclusion
The trial court did not err in denying the defendant's motion to suppress. A search warrant was issued based upon information received from a confidential informant and verified, in part, by sheriff's officers. Even if the affidavit supporting the search warrant does not contain sufficient indicia of probable cause based upon the totality of the circumstances, the good faith exception of Leon is applicable.
The evidence adduced at the trial, although almost entirely circumstantial, is sufficient to support the defendant's conviction.
The trial court did not abuse its broad discretion in its rulings upon issues of relevancy of evidence concerning Matthews.
Although defendant is a first felony offender, the five year hard labor sentence which was suspended with the defendant placed upon probation conditioned upon one year in the parish jail, is not clearly excessive.
For these reasons, the defendant's conviction and sentence are AFFIRMED.