STATE OF LOUISIANA
COURT OF APPEAL, THIRD CIRCUIT

11-160

STATE OF LOUISIANA

VERSUS

KERRY JERROD SANDERS

**********

APPEAL FROM THE
NINTH JUDICIAL DISTRICT COURT
PARISH OF RAPIDES, NO. 295323
HONORABLE JOHN C. DAVIDSON, DISTRICT JUDGE

**********

MARC T. AMY
JUDGE

**********

Court composed of Ulysses Gene Thibodeaux, Chief Judge, Marc T. Amy, and Phyllis
M. Keaty, Judges.

AFFIRMED.

James C. Downs
District Attorney
Post Office Drawer 1472
Alexandria, LA   71309
(318) 473-6650
COUNSEL FOR APPELLEE:
     State of Louisiana

Thomas R. Willson
Post Office Drawer 1630
Alexandria, LA   71309
(318) 442-8658
COUNSEL FOR APPELLEE:
     State of Louisiana

**Paula C. Marx**
**Louisiana Appellate Project**
**Post Office Box 80006**
**Lafayette, LA   70598-0006**
**(337) 991-9757**
**COUNSEL FOR DEFENDANT/APPELLANT:**
 **Kerry Jerrod Sanders**

**Kerry Jerrod Sanders**
**Louisiana State Penitentiary**
**Camp D, Raven 3-R**
**Angola, LA 70712**

AMY, Judge.

A jury convicted Kerry Sanders of second degree murder in the shooting death of Jarvis Brown. The trial court imposed a sentence of life imprisonment without the possibility of parole, probation, or suspension of sentence. On appeal, the defendant questions the sufficiency of the evidence and advances several assignments of error regarding the jury. For the following reasons, we affirm.

### Factual and Procedural Background

This appeal involves the October 31, 2008 shooting death of Jarvis Brown on the front porch of an Alexandria, Louisiana residence. At the time of his death, Mr. Brown was having his hair cut by Adrian Williams. According to Adrian's testimony, the defendant, Kerry Sanders, approached the porch and inquired as to Mr. Brown's identity. Adrian testified that he and his brother, Marc Williams, who was also in front of the house, identified Mr. Brown to the defendant. Mr. Brown eventually identified himself to the defendant by his nickname, "G-money." Adrian testified that he thereafter returned to his conversation and that within "maybe twenty seconds," a gun was fired. The record indicates that Mr. Brown was killed by a gunshot wound to the head. Adrian also sustained a gunshot injury to his hand. While Adrian testified that he did not see the defendant "pull the trigger," he "actually seen [sic], heard his voice, and glanced at [h]im that night."

Thereafter, both Adrian and Marc ran into the house, where their nephew allegedly telephoned for assistance. Adrian and Marc testified that they thereafter left the area. Testimony indicates that Adrian's vehicle was later stopped by a police officer, who called for an ambulance due to the gunshot wound to Adrian's hand. Questioning by the investigating officers revealed the defendant as the suspected perpetrator.

Thereafter, a grand jury charged the defendant with second degree murder, and a petit jury later convicted the defendant as charged. Although the defendant questioned aspects of the jury's verdict, as will be discussed below, the trial court ultimately denied the defendant's motion for new trial. The trial court imposed the mandatory life sentence of La.R.S. 14:30.1(B).

The defendant's counsel presents the following issues for review:

> 1. Does the jury verdict of Second Degree Murder meet the legal standard of sufficiency of the evidence?
>
> 2. Was Kerry Sanders denied his right to a fair and impartial jury of twelve persons?
>
> 3. Did [the] trial court err in denying the Motion for New Trial?
>
> 4. Was a full evidentiary hearing required to determine if Kerry Sanders was denied his right to a fair and impartial jury of twelve persons and whether one juror was improperly deprived of her right to participate in the jury in this case, after being selected to serve?
>
> 5. Does a non-unanimous verdict violate the United States and Louisiana Constitutions in this case?

The defendant also filed a pro se brief, advancing a number of arguments. He questions whether the audio tapes of the 911 calls related to the crime should have been played, and whether the State failed to disclose 911 calls which may have been exculpatory. He also questions whether he was provided with adequate discovery materials and whether further exculpatory evidence exists. Finally, he contends that the prosecutor acted improperly in having uniformed officers available to testify, but not calling them to the stand.

## Discussion

*Errors Patent*

Pursuant to La.Code Crim.P. art. 920, we have reviewed this matter for errors patent on the face of the record. We find no such errors.

*Sufficiency of the Evidence*

The defendant questions the sufficiency of the evidence to support the conviction. Namely, the defendant contends that no physical evidence established that he was the perpetrator and that the witness testimony on which the conviction was based was "uncorroborated" and "inconsistent." He asserts that the position of the victim's body was contrary to the description of events by Adrian and Marc Williams.

The Supreme Court of Louisiana has explained that:

> In evaluating the sufficiency of the evidence to support a conviction, a reviewing court must determine whether, viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found proof beyond a reasonable doubt of each of the essential elements of the crime charged. *Jackson v. Virginia*, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979); *State v. Captville*, 448 So.2d 676, 678 (La.1984).

*State v. Leger*, 05-11, p. 91 (La. 7/10/06), 936 So.2d 108, 170.

The defendant was convicted of second degree murder. For this offense, La.R.S. 14:30.1(A)(1) provides that: "[s]econd degree murder is the killing of a human being . . . [w]hen the offender has a specific intent to kill or to inflict great bodily harm[.]" With regard to specific criminal intent, La.R.S. 14:10(1) defines the term as "that state of mind which exists when the circumstances indicate that the offender actively desired the prescribed criminal consequences to follow his act or failure to act." In *State v. Brown*, 03-0897, p. 22 (La. 4/12/05), 907 So.2d 1, 18, *cert. denied*, 547 U.S. 1022, 126 So.Ct. 1569 (2006), the supreme court stated:

> Specific intent need not be proven as a fact, but may be inferred from the defendant's actions and the circumstances of the transaction. *State v. Maxie*, 93-2158, (La.4/10/95), 653 So.2d 526, 532. Deliberately pointing and firing a deadly weapon at close range are circumstances which will support a finding of specific intent to kill. *State v. Seals*, 684 So.2d 368, 373 (La.1996) (citing *State v. Williams*, 383 So.2d 369 (La.1980); *State v. Procell*, 365 So.2d 484 (La.1978)).

3

After consideration of the elements of La.R.S. 14:30.1(A), and in light of the sufficiency of the evidence standard of review, we find no support for the defendant's argument. Instead, eyewitness accounts identified the defendant as the perpetrator.

Both Adrian and Marc testified that they were in front of the house with Mr. Brown prior to the events at issue. They explained that he was seated in a chair while having his hair cut by Adrian. They both stated that the defendant, whom they identified as their cousin, approached the home's porch and inquired as to Mr. Brown's identity. Each testified that, within a short period of time, the defendant moved toward Mr. Brown and that Mr. Brown was shot at close range. Although the brothers did not see the gun, each was certain as to the defendant's identity as the perpetrator.

According to the forensic pathologist who performed the autopsy, the gunshot to the head sustained by Mr. Brown was consistent with "somebody sitting in a chair and a shooter standing." He explained that the muzzle of the weapon used could have been "two to three inches from the skin." The report, introduced into evidence, lists "[g]unshot wound to the head" as the cause of death and the "interval" as "[m]inutes[.]"

Gordon Brower also testified that he was present at the scene. At trial, and like the Williams brothers, Mr. Brower stated that the defendant approached the group and inquired as to who was having his hair cut. According to Mr. Brower, the defendant turned and walked to a gate before returning. The defendant then pulled out a gun, fired a shot, and left the scene. Mr. Brower stated that he saw the defendant "every now and then" and that he was certain as to his identity.

Betty Williams, who owned the home and was inside at the time of the shooting, testified that, after she heard a shot fired, her sons, Adrian and Marc, ran

4

inside. She stated that Adrian was bleeding and that Marc reported that: "Mama, Kerry just shot Gundy[1] on the porch." She acknowledged at trial that when the police arrived at her home and asked what had happened, she told them that she did not know.

As noted by the defendant, certain weaknesses in the State's evidence existed, such as conflicting evidence as to the direction in which the victim was facing when shot[2] and the timeliness by which the defendant was named as the suspect.[3] Further, the defense presented two witnesses who testified that they had seen the defendant elsewhere during the time frame of the shooting.

Also, Opal Parker, a neighbor of Ms. Williams, testified at trial that she was standing in front of her house when she heard the shot fired. She explained that there had previously been arguing from the direction of Ms. Williams' house and that, in addition to Adrian, Marc, and Mr. Brower being in the yard, Kenneth Williams was with the group as well. Ms. Parker denied that the defendant was there. She reported that Kenneth jumped the fence and asked her what had happened. Ms. Parker stated that she also heard Marc loudly state: "You got what you deserved."

However, and although the defendant relies on Ms. Parker's testimony to discount the testimony of the State's witnesses, rebuttal witness Corporal Doug Alford of the Alexandria Police Department explained that, when he spoke with Ms. Parker at the scene, she did not relate that she was outside of her house at the

---

[1] The record indicates that the victim was referred to as "Jarvis," "G-Money," and "Gundy."

[2] The Williams brothers testified that the victim was facing the street, yet they were questioned about photographs indicating that the victim's chair was turned toward the side of the house.

[3] Sergeant Lee Leach of the Alexandria Police Department testified that Adrian identified the defendant as the perpetrator the morning following the shooting. However, when Adrian was stopped by a police officer immediately after the events, and before he was taken to the hospital, he did not identify the defendant.

time of the shooting, that she heard argument before the shooting, or that she saw anyone jump over the fence. Corporal Alford also denied that Ms. Parker told him that she heard someone state: "'He got what he deserved.'"[4]

Corporal Gary Mouliere, who was present for Ms. Parker's interview, explained that Ms. Parker "[s]aid that she had been inside her house, heard the gunshots, and came outside. When she came outside she saw a black male running from the area in front of 71 Eastwood." Corporal Mouliere also denied that Ms. Parker reported seeing someone jump a fence or make any statements.

Notwithstanding the testimony cited by the defendant, the jury heard from several eyewitnesses to the events who identified the defendant as the perpetrator. It is within the fact-finding role of the jury to assess the credibility of the witnesses. *State v. Bordenave*, 95-2328 (La. 4/26/96), 678 So.2d 19. That role will not be impinged upon by a reviewing court unless necessary to ensure due process of law. *Id.* The record in this case presents no basis for re-evaluation of the jury's decision to credit the testimony of the State's witnesses. Instead, when the evidence is viewed in the light most favorable to the prosecution, as the standard of review requires, it supports the view that the defendant killed the victim by deliberately placing the barrel of a gun within a few inches of his head and firing a fatal shot. Thus, a rational trier of fact could have found the essential elements of La.R.S. 14:30.1 proven beyond a reasonable doubt. To the extent the defendant cites inconsistencies in witness accounts of the event at issue, the jury

_____

[4] Corporal Alford read the report of his interview into the record. The report stated:

> I began to canvas the scene for witnesses and anyone who had seen the incident. I was able to find only one witness to the shooting, Opal Parker. Parker stated she was inside her residence at 75 Eastwood when she heard an argument and called her old man who had just left. She stated she heard two gunshots and saw an unidentified black male running towards Hynson Street. She said it looked like he had a heavy coat on and was dressed in all black. That was the only description I was able to obtain.

was made aware of the chaos existing at the scene and could have factored this evidence into its credibility determinations.

This assignment lacks merit.

*Jury Composition*

Next, the defendant contends that he was denied a twelve-person jury and that this denial resulted in a violation of due process. In particular, the defendant states that: "one juror was excused from final deliberation and voting by the jury foreman, effectively depriving the defendant of his statutorily and constitutionally mandated twelve jurors." He contends that the trial court further erred in denying his motion for new trial in which he questioned this aspect of the proceeding.

Louisiana Constitution Article 1, § 17(A) provides, in pertinent part, that: "A case in which the punishment is necessarily confinement at hard labor shall be tried before a jury of twelve persons, ten of whom must concur to render a verdict." Further, La.Code Crim.P. art. 782(A) provides that: "Cases in which punishment is necessarily confinement at hard labor shall be tried by a jury composed of twelve jurors, ten of whom must concur to render a verdict." Accordingly, as the defendant was tried for second degree murder, which is necessarily punished by confinement at hard labor, he was entitled to a twelve-person jury. In order to be convicted, at least ten of those jurors must have voted "guilty" of second degree murder.

The record reflects that the defendant's jury was comprised of twelve jurors and two alternates. Before deliberation, the trial court dismissed the alternates. After the jury returned with a guilty verdict, the jury was polled.[5] The transcript

---

[5] Louisiana Code of Criminal Procedure Article 812 provides, in pertinent part, that: "The court shall order the clerk to poll the jury if requested by the state or the defendant. It shall be within the discretion of the court whether such poll shall be conducted orally or in writing[.]"

indicates that each of the twelve jurors responded "Yes" when asked if this was their verdict.

However, the record reflects that afterwards, one of the jurors, Ruth Wilson, informed the trial court that this was not her verdict.[6] Acting upon a related motion to correct the record, the trial court conducted a hearing on Ms. Wilson's statement. At that hearing, the trial court inquired how she had voted. Ms. Wilson responded: "I didn't." However, she acknowledged that she had responded affirmatively when she was asked: "'was this your verdict?'" Ms. Wilson explained that: "I hesitated but answered yes, because I thought you were asking if it was our unanimous vote as a jury." She added: "And it was." Ms. Wilson responded "Yes" when the trial court inquired whether she was confused by the question.

Review of this post-trial hearing, contained in the appellate record, indicates that the matter was, in fact, submitted to a twelve-member jury. Even ignoring Ms. Wilson's acknowledgement during polling that she voted "guilty," greater than ten jurors returned a guilty verdict. Accordingly, the defendant was not denied his right to a twelve-member jury pursuant to La.Code Crim.P. art. 782(A). Further, the number of jurors voting "guilty" exceeded the Article's mandate that ten members must concur in order to render a verdict.

This assignment lacks merit.

*Juror's Rights*

In a related assignment, the defendant contends the trial court erred in failing to hold a full evidentiary hearing in order to assess whether Ms. Wilson "was improperly deprived of her right to participate in the jury in this case[.]"

---

[6] The trial court explained that: "after the . . . trial when I was visiting with the jury in the back, one of the jurors did indicate that it was not her verdict, so it was an eleven to one decision." The trial court noted that the statement in this regard was "not evidence" and, therefore, it held a hearing on the motion to correct record.

However, as previously explained, the trial court conducted an evidentiary hearing regarding Ms. Wilson's vote. Ms. Wilson's testimony from that hearing indicates that she did, in fact, enter into deliberations with the jury but that she did not enter her vote. The reason for that failure is alluded to in discussion between the attorneys and the trial court, but no evidence on this point was entered into the record. The defendant's further contention that this juror voted "not guilty" is also contrary to all evidence contained in the record.

Accordingly, the defendant's assignment in this regard is without merit.

*Non-Unanimous Verdict*

In light of the above testimony elicited at the post-trial hearing, the defendant contends that "he was convicted by a non-unanimous verdict in violation of the United States and Louisiana Constitutions." He again contends that Ms. Wilson was "precluded from participation."[7]

As stated above, the record contains no evidence indicating that Ms. Wilson was precluded from participation as a juror. Additionally, both the United States Supreme Court and the Supreme Court of Louisiana have rejected the argument now advanced by the defendant that a non-unanimous verdict is unconstitutional. *See, e.g., Apodaca v. Oregon*, 406 U.S. 404, 92 S.Ct. 1628 (1972); *State v. Bertrand*, 08-2215 (La. 3/17/09), 6 So.3d 738. *See also Johnson v. Louisiana*, 406 U.S. 356, 92 S.Ct. 1620 (1972); *State v. Edwards*, 420 So.2d 663 (La.1982); *State v. Simmons*, 414 So.2d 705 (La.1982); *State v. Green*, 390 So.2d 1253 (La.1980);

---

[7] In a related motion for new trial filed below, the defendant alleged that:

> [A]t least one of the twelve mandatory jurors in the case, was excused from final deliberation and voting by the jury foreman, because the foreman determined that he already had the requisite number of votes to render a "guilty" verdict, and did not require that 12[th] juror's participation, effectively depriving defendant of the statutory and constitutionally mandated twelve jurors[.]

*State v. Jones*, 381 So.2d 416 (La.1980); *State v. Hodges*, 349 So.2d 250 (La.1977), *cert. denied*, 434 U.S. 1074, 98 S.Ct. 1262 (1978).

Given the consistency and certainty of the controlling jurisprudence in this area, as well as the state of the evidence in the record, we reject the defendant's contention that the issue should be reconsidered.

This assignment lacks merit.

*Evidence Disclosed*

In several components of his pro se brief, the defendant contends that the audio tapes of 911 telephone calls related to the event should have been admitted into evidence. He further contends that the State failed to adequately disclose those recordings that were exculpatory in nature. He asks this court to permit him to inspect and copy the State's files for further determination as to whether exculpatory evidence was withheld.

We note that defense counsel and the State filed a joint stipulation wherein, among other things, the defendant stipulated that the State had provided a copy of its entire file and that any motion for discovery and inspection was satisfied.[8] In addition to this stipulation, the record contains no factual basis to support the

---

[8] The stipulation, filed February 12, 2009, provides:

> Defendant herein, through counsel, reserving the right to file timely additional motions as provided by law, together with counsel for the State of Louisiana, stipulate that the undersigned Assistant District Attorney has provided a copy of the entire file in this matter to the defendant. The State agrees to provide to the defense any additional file material subsequently obtained. The defense stipulates that receipt of this file serves as notice of the State's intention to introduce all evidence (including defendant's statements) included therein. The production of the file constitutes full satisfaction of the Motion for Discovery and Inspection, Motion for Bill of Particulars, Motion for Preliminary Exam and any request for Public Records pursuant to *Louisiana Revised Statute* 44:1, et seq. The defendant and the State further stipulate that receipt of this file obligates the defense to timely disclose to the State all material discoverable by the State pursuant to *Louisiana Code of Criminal Procedure*, Articles, 724-28, including, but not limited to, notice of defense based on mental condition and notice of alibi.

defendant's contention that evidence, exculpatory or not, was withheld from the defense.

These arguments lack merit.

*Calling of Witnesses*

Finally, the defendant contends that the State "tamper[ed]" with witnesses by issuing subpoenas for certain uniformed officers and 911 callers, but not calling them to testify. He asserts that all of the officers involved in the investigation should have been called to testify. Despite the defendant's argument, neither law nor jurisprudence supports his allegation that the State acted impermissibly in the method by which it presented its witnesses.

This assignment lacks merit.

## DECREE

For the foregoing reasons, the defendant's conviction for second degree murder is affirmed.

**AFFIRMED.**